Phillip M. TURNER and Mary Anne TURNER,
et al *v.* WEST MEMPHIS FEDERAL SAVINGS
& LOAN ASSOCIATION and J. H.
SPEARS, Trustee

79-52                                    588 S.W. 2d 691

Opinion delivered September 24, 1979 .
(In Banc)

*N. M. Norton,* for appellants.

*Spears, Sloan & Johnson,* for appellees.

JOHN I. PURTLE, Justice. This case involves a foreclosure action by the creditor upon a residential loan which was in default. The Turners', obligors, defense was usury and failure to timely make material disclosures as required by the Truth-in-Lending Act and by Regulation Z. The trial court found the creditor did not make a usurious charge and that there was no failure to make a material disclosure. Judgment for the creditor was granted upon the complaint and the property was ordered sold at public auction. The proceeds were applied to the loan and other judgments which were included in the decree. Obligors bring this appeal.

We are called upon to determine whether the chancellor erred in holding that the finance charges made by the creditor did not exceed the Arkansas statutory interest limit of 10% and whether the failure to include on the disclosure statement the total finance charges and the total of all payments to be made under the loan violated the Truth-in-Lending Act. We conclude the contract was not usurious but there was a failure to make material disclosures as required by the Act.

The facts are not really in dispute. September 9, 1975, Phillip M. Turner and wife, Mary Anne Turner, appellants, obtained a loan from the West Memphis Federal Savings & Loan Association, appellee, for the purpose of financing a dwelling which they owned and occupied. The loan was accomplished by execution of a note for $38,500 bearing interest at 9%[1] and a mortgage which included waiver of dower by the wife. The disclosure statement submitted by appellee failed to disclose the total amount of finance charges or the total of all payments to be made on the loan. Appellants signed and returned the disclosure statement which revealed the creditor had made a 1% origination fee charge of $385 as well as other charges to appellants.

The loan was completed September 9, 1975, and the first payment, in the amount of $323.10, was due on October 1, 1975, although it was not made until October 10, 1975. There were to be 300 payments in the same amount and each was due on the first of each succeeding month. Most of the payments were late with the last payment, due October 1, 1977, being made on December 9, 1977. Appellees commenced foreclosure action on May 10, 1978, at a time when the payments were considerably in default. Appellants first filed an answer that amounted to a general denial. The answer was amended and a counterclaim filed on July 6, 1978. The answer and counterclaim pleaded usury as a defense and sought customary relief in usury cases. The answer was supplemented on July 14, 1978, by appellants seeking to rescind the contract on the grounds of failure of appellees to make a material disclosure as required by 15 USC 1635.

The court found against the appellants on both counts and entered a decree on October 16, 1978, ordering foreclosure on the loan. The property was subsequently sold at public auction and the proceeds applied to appellants' indebtedness. Several other judgments against the appellants were granted in the decree but we do not deem it necessary to deal with them in this opinion. The proceeds of the sale were insufficient to pay all judgments granted against appellants.

---

[1]The disclosure statement showed the annual percentage rate as 9.25%. See Exhibit "B" attached as an appendix to dissenting opinion.

We first consider the defense of usury. Appellants rely upon *Ryder Truck Rental* v. *Kramer,* 263 Ark. 169, 563 S.W. 2d 451 (1978), in support of the usury allegation. *Ryder* was an appeal from a summary judgment declaring a loan to be usurious. An admission in *Ryder* conclusively proved that during a period of 32 months the interest rate charged and collected exceeded 10% in each month. We have no such admission in the present case. In fact, the figures from the payment record in the present case conclusively show the interest charged and collected amounted to less than 10%. Therefore, *Ryder* is not applicable here.

The origination fee of 1%, or $385, was withheld from the obligors. Therefore the $38,500 loan was reduced to $38,115. We conclude that this $385 was a part of the finance charge. The contract had been in force for about 32 months when suit was filed. Appellants had paid $7,674.10 in interest plus the $385 origination fee for a total payment of $8,059.10. During this same period of time appellees could have collected $8,422.56, including the $385, without exceeding the 10% statutory limit. By adding the $385 origination fee to the interest the rate actually charged was 9.0404%. Therefore, the contract was not usurious.

We next consider the truth in lending disclosure statement. 15 USC 1635 reads:

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest is retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the

obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.

(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down-payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

(c) Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof.

(d) The Board may, if it finds that such action is necessary in order to permit homeowners to meet bona fide personal financial emergencies, prescribe regulations authorizing the modification or waiver of any rights created under this section to the extent and under the circumstances set forth in those regulations.

(e) This section does not apply to the creation or retention of a first lien against a dwelling to finance the acquisition of that dwelling.

If the loan had been to finance the acquisition of a dwelling the Act would have no application. The disclosure form used by appellants indicates this loan was on a dwelling then owned and occupied by appellants. Therefore, we hold the Act applicable. The disclosure form used fails to state either the total finance charges or the aggregate or all payments to be made pursuant to the contract. It is true these figures could have been obtained by using the figures stated on the form. We do not find this question to have been decided by this Court nor any United States District Court in Arkansas. Pub. L. 90-321, Title 1, § 125, (15 USC 1635) gives the obligor up until midnight of the third business day following consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, to notify the creditor of intent to rescind. Such intent was given to the creditor on July 14, 1978, almost three years after the transaction was consummated. The matter of whether a notice to rescind is timely was treated in *Ljepava* v. *M.L.S.C. Properties, Inc.*, 511 F. 2d 935 (9th Cir. 1975). In that case the court pointed out that the inadequacies found in the disclosure statement were never corrected; therefore, the Ljepavas had the right to rescind at any time prior to trial. See also *Sosa* v. *Fite*, 498 F. 2d 114 (5th Cir. 1974). There was a timely rescission in *French* v. *Wilson*, 446 F. Supp. 216 (D.C. R.I. 1978), when the loan had been made in October of 1973 and the rescission was made in May of 1975. A loan had been outstanding from August of 1973 until August of 1974 when the obligors instituted a rescission action. This, too, was held to be a timely rescission. Therefore, if the insufficiencies in the disclosure statement were material the notice in this case was timely.

The only case we have located dealing directly with the term "material disclosure" is *Ivy* v. *United States of America Department of Housing and Urban Development*, 428 F. Supp. 1337 (D.C. Ga. 1977). Although the court in *Ivy* found there was not a material nondisclosure, the meaning of

"material" was discussed at length. The court stated:

> . . . The Court is persuaded that the different language used in the statute was meant to limit liability under the rescission section to only those nondisclosures which a reasonable consumer would view as significantly altering the "total mix" of information made available. That is, the omission need not be so important that a reasonable consumer would probably change creditors. However, the information must be of some significance to a reasonable consumer and under the circumstances in his "comparison shopping" for credit.

In the *Ivy* case the defendants conceded they failed to disclose accurately the total of the payments. However, the total failure to disclose amounted to only $11.30 on a total repayment of $12,066.50. The court further stated that it was convinced the mis-disclosure would have absolutely no effect on any reasonable consumer shopping for credit. The "material" disclosure in § 125 (15 USC 1635) is significant because the civil liability section (15 USC 1640) imposes a liability for failure to "disclose." The civil failure, as provided in 1640, is not argued in the case before us; therefore, we are considering the case under 15 USC 1635.

A number of cases have dealt with the mechanics of rescission as required by § 125 of the Act (15 USC 1635). It was stated in *Ljepava,* supra, that:

> However, we have recently indicated that the statute should not be read as requiring the lender to perform first. In *Palmer* v. *Wilson,* supra, (502 F. 2d 860), the majority held that a trial judge had the discretion to condition rescission on tender by the borrower of the property he had received from the lender.

The court of appeals reversed *Ljepava,* supra, because the trial court apparently felt he had no discretion and that tender was a mandatory requirement for rescission. The court of appeals further held the court should be concerned that the creditor ultimately received the money advanced under the loan agreement. It was held in the case of *Eby* v. *Reb Realty,*

*Inc.*, 495 F. 2d 646 (9th Cir. 1974), that in some cases both rescission and civil penalties were authorized. Usually the courts have limited the obligors to recovery either under 15 USC 1635 or 15 USC 1640. Under the latter section, obligors are entitled to receive a penalty of up to $1,000 plus a reasonable attorney's fee. § 1640 (a) reads as follows:

> (a) Except as otherwise provided in this section, any creditor who fails in connection with any consumer credit transaction to disclose to any person any information required under this part to be disclosed to that person is liable to that person in an amount equal to the sum of
>
> (1) twice the amount of the finance charge in connection with the transaction, except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; and
>
> (2) in the case of any successful action to enforce the foregoing liability, the costs of the action together with a reasonable attorney's fee as determined by the court.

A review of the federal cases decided under the Truth-in-Lending Act leads us to conclude an action to rescind is an equitable proceeding and the Court should look not only at the violations by the creditor but should consider the course of action taken by the debtor. From reading a history of the legislation it is apparent the Act was directed at loan sharks and fly-by-night operators. By exclusion from the Act of transactions relating to the acquisition of new homes and from the debate by member of Congress there is a clear indication that a first lien on a home is treated differently from a loan for personal property or home improvement. It was not the intent of Congress to allow all loans on a dwelling to be excluded from the provisions of the law.

We had occasion to consider the failure to disclose, as required by the Truth-in-Lending Act, in the case of *Nietert & Goodwin* v. *Citizens Bank & Trust Co.*, 263 Ark. 251, 565 S.W. 2d 4 (1978). In *Neitert* the loan had been in existence for

about two years when foreclosure was commenced and the obligors then decided to rescind for failure to disclose, as required by 15 USC 1635. We found there was a failure to disclose but denied relief to the obligors because they failed to tender as required by the Act. There was another factor involved in *Nietert* which is not present here. The creditor there agreed to give the obligor time to try to arrange for financing the required tender from some other source. We held the borrowers were required to pay what they had received from the lender before the penalties applied. Thus the conduct of the parties is a relevant factor to be considered in each case.

We are not unmindful of the fact that the creditor is required to return the property and remove any liens when rescission is properly requested. Neither are we unaware of the fact that the obligor has an equally responsible duty to return the funds borrowed, less the overcharges, to the lender. In the present case the creditor was not in possession of anything which could be returned to the obligors except the note and the mortgage. Apparently these items had already been placed in the court files relating to the foreclosure action. Appellants had, subsequent to the loan in question, imposed an additional mortgage upon their dwelling. It is clear from the circumstances in this case that appellants could not tender to appellee that which was due. We have a failure of both parties to meet the conditions required by the law. Each was entitled to something which was unobtainable at the time. Appellants never tendered to appellee the money to which they were entitled; therefore, they have not complied with the law. It would have been a useless gesture for appellees to have demanded their money from appellants.

The mechanics of rescission are not necessarily bound to proceed in the exact manner in which they are set out in the Act. Both parties have obligations and it was impossible to set them out simultaneously. It is logical to assume the obligor should be bound to return any items received through the transaction although notice of rescission must first be given. Had appellants obtained an automobile with the proceeds of the loan and it had been destroyed by fire or otherwise, it would have been impossible to return it. Under those circumstances they would be obligated to return the money

borrowed, less items properly deductible. Under the present circumstances it would have been inequitable to require the lender to return the loan proceeds without any expectation of receiving anything of value in return. It is obvious the appellants could not tender their dwelling; therefore, they were obligated to tender the money received by them plus that which had been paid out on their behalf to extinguish prior loans.

The failure by the creditor to make a material disclosure authorized appellants to rescind the transaction. From the wording of the Act and the history of its enactment, we are of the opinion that the rescission procedure contemplated the transaction being rescinded within the three day period. However, the language used in the Act clearly extends the right of rescission until such time as the material disclosure is in fact made. From the above, and the many cases decided under the Act, we conclude that rescission pursuant to this law is an equitable proceeding. It was not contemplated that the borrower be allowed to reap the benefits of the transaction for a period of years and then call upon the lender to make an inequitable restitution. There is a fundamental difference in the benefits which would have been received by the borrowers had the transaction been rescinded within the three day period and those they claim to be entitled to after a period of months or years. We believe the relief granted should approximate that which would have been due during the three day period even though rescission occurs much later.

We feel under the particular circumstances in this case that appellants should not be liable to the appellee for the attorney's fees imposed upon them in the decree nor should they be liable for court costs but should receive the origination fee in the sum of $385. Neither do we feel appellants should be entitled to an attorney's fee in view of the conduct of the parties concerning the rescission. Therefore, the case is remanded to the trial court with directions to enter a decree consistent with this opinion.

Reversed and remanded.

FOGLEMAN, J., not participating.

BYRD, J., dissents.

CONLEY BYRD, Justice, dissenting. I disagree with the majority that appellee, West Memphis Federal Savings & Loan Association failed to make a "material disclosure" in its Truth-in-Lending Statement as a matter of law as distinguished from a matter of fact. Appellee's Truth-in-Lending Statement (attached hereto as an appendix) shows that the amount of the note is $38,500; that an origination fee of $385 was charged the borrower; the net amount financed ($38,500—$385) was $38,115; the annual percentage rate of the finance charge was 9.25%; and the principal and interest was to be paid in 300 equal monthly installments of $323.10 with the first payment being due on the first day of October, 1975 and a like such payment being due on the first day of the month thereafter. Therefore, the only two things the statement fails to show are the total amount of the finance charge and the total amount of the payments. However, these two items can easily be determined by simple arithmetic — *i.e.* 300 X $323.10 = $96,930, the total of the payments and when the amount financed, $38,115 is subtracted from the total payment we find that the total of the finance charges is $58,815. The record here as abstracted shows nothing about appellants' abilities to determine whether these omitted items were material. Instead appellants rely solely upon the Truth-in-Lending Statement to bring themselves within the statutory definition of a material disclosure. If appellants should happen to be the president of a Commercial Bank or a competitive savings and loan bank or a person holding a master's degree in mathematics[1] the Federal Reserve Board, who drew Regulation (12 CFR § 226.1 et seq.), would look "red faced" in trying to explain to any normal citizen how appellee's Truth-in-Lending Statement failed to make a "material disclosure." The Federal Reserve Board staff, Federal Register Volume 42, No. 144, July 27, 1977, agrees with my view — it is there stated:

"Section 226.9(a) provides that the three-day right

---

[1]The record shows that all but $6,587.22 of this $38,115 loan was used to pay off four other bank loans to appellants.

of rescission begins on the date the transaction is consummated or the date of delivery of the rescission notice 'and all other material disclosures required by this Part, whichever is later.' It is staff's opinion that where a creditor is making use of the provisions of § 226.9(g) and has provided its customers with printed information from which the items listed in that section can be determined, this information constitutes the 'other material disclosures' referred to in § 226.9(a)."

The foregoing statement is in accordance with the Truth-in-Lending Act § 102 (15 U.S.C. § 1601) which provides:

"The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this title to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."

This position is not original with me, see *Hervey* v. *Housing Development Corp.*, 451 F. Supp. 1198 (D.C. Mo. 1978), where the Truth-in-Lending Statement failed to show the total amount of the payments and *Ivey* v. *United States Dept. of Housing & Urban Dev.*, 428 F. Supp. 1337 (D.C.N.D. Ga. 1977), wherein there was an error of $11.30 in calculating the total payments.

Just so that my position will not be misunderstood, it is that when the Truth-in-Lending Statement furnishes information from which any omission can be ascertained by simple mathematical calculation according to the math taught generally in the junior high schools, then such an omission standing alone should not be considered as a "material omission" within the meaning of 15 U.S.C. § 1635. Now as to some aged or illiterate persons such an omission might become a material omission, but the person seeking rescission

under 15 U.S.C. 1635 should shoulder the burden of showing that the non-disclosure was material as to him.

Finally, I note that the majority quote and rely upon 15 U.S.C. § 1640 which provides for the recovery of civil penalties and attorney's fees for a non-disclosure. I can see no reason for the majority to rely upon 15 U.S.C. § 1640 because that statute contains a one year statute of limitations, 15 U.S.C. § 1640(e). The loan here was made on September 9, 1975 and the Truth-in-Lending defense was first raised by an amended answer on July 14, 1978. Furthermore, the appellants did not rely upon 15 U.S.C. § 1640 in their argument before this court.

If one would read the Truth-in-Lending Act in its entirety instead of just a passage here and there, he would find that there is a material difference between the relief provided in 15 U.S.C. § 1640 and the relief provided in 15 U.S.C. § 1635. The former, 15 U.S.C. § 1640, which does not mention "material disclosures," provides for the recovery of limited penalties plus an attorney's fee but incorporates a statute of limitations of only one year from the date of the loan. However, 15 U.S.C. § 1635 provides for a rescission for material non-disclosures together with the recovery of all finance charges paid to the lender and has a three year statute of limitation. 15 U.S.C. § 1635 makes no provision for the recovery of attorney's fees.

For the reasons herein stated, I respectfully dissent.