**Kenneth L. VARADY and Wanda Y. Varady, Plaintiffs-Appellants,**

v.

**Robert J. WHITE and Marilyn I. White, Defendants-Appellees,**

and

**Dennis M. Hipp, Van Schaack & Company, a Colorado corporation, and James L. Marr, Public Trustee of Douglas County, Colorado, Defendants.**

No. 81CA0027.

Colorado Court of Appeals, Div. II.

March 11, 1982.

Rehearing Denied April 15, 1982.

Certiorari Dismissed on Stipulation of Parties July 21, 1982.

Law Offices of John M. Franks, John M. Franks, Bosworth & Slivka, P.C., Richard P. Slivka, Denver, for plaintiffs-appellants.

George F. Elsner, Castle Rock, for defendants-appellees.

KELLY, Judge.

Plaintiffs, Wanda and Kenneth Varady, appeal the trial court order granting summary judgment in favor of defendants, Marilyn and Robert White. We reverse and remand.

Shortly after purchasing the Whites' home in 1976, the Varadys demanded rescission of the purchase contract and the Whites refused. The Varadys brought an action, alleging that the Whites' misrepresentations induced them to purchase the home and that the Whites had failed to make disclosures required under Colorado's version of the Uniform Consumer Credit Code (UCCC), § 5–1–101, et seq., C.R.S. 1973. The trial court found that no material misrepresentations had been made and that the UCCC did not apply. On appeal, we affirmed the trial court's finding on misrepresentation, but remanded the cause for new trial on the issue whether the sale was a "consumer credit sale" within the meaning of § 5–2–104(1)(a), C.R.S.1973. *Varady v. White,* 42 Colo.App. 389, 595 P.2d 272 (1979) (Varady I). On remand, the trial court held that the Whites' sale of their residence to the Varadys was not a "consumer credit sale."

I.

Section 5–2–104(1)(a) provides that a "consumer credit sale" is a sale of an interest in land in which "[c]redit is granted ... by a person who *regularly* engages as a seller in *credit transactions of the same kind* . . . ." (emphasis added). Thus, in order to determine whether the disputed transaction is subject to the disclosure requirements of the UCCC, we must consider whether, as a matter of law, the prior transactions constituted "regular" credit transactions and whether they were of "the same kind" as the subject transaction.

Colorado's UCCC is based on the Federal Consumer Credit Protection Act (CCPA), 15 U.S.C.A. § 1601, et seq., and the intent of the CCPA "seems to have been to except from the Act only those lenders whose extensions of credit are an occasional, isolated, and incidental portion of their business." *Eby v. Reb Realty, Inc.,* 495 F.2d 646 (9th Cir.1974). Thus, private homeowners who take back second mortgages upon selling their homes would normally not be required to comply with the disclosure requirements of the Act. [1969–1974 Transfer Binder] *Cons. Cred. Guide* (CCH) ¶ 30,206 (Federal Reserve Board Letter November 4, 1969).

Although the Whites sold their own home and took a second mortgage, *Varady I, supra,* they had subdivided their 90-acre property and sold five unimproved lots in their subdivision prior to the sale to plaintiffs. Neither defendant had a real estate license or worked full time in the real estate business: Robert White was an electronic technician and Marilyn White was a housewife. However, the subdivision and sale of lots is itself a business venture. After five separate sales of lots from a 90-acre tract, the Whites cannot claim ignorance of real estate transactions. Moreover, they sold more unimproved lots after the sale to plaintiffs. In *Eby, supra,* the realty firm was held to have engaged in "regular" cred-

it transactions although it had sold only three parcels on credit within a time span of nineteen months. The Whites sold lots in September and October of 1974, and April, June, and July of 1976 before the sale to the Varadys. This constitutes "regular" credit transactions for purposes of § 5–2–104(1)(a), C.R.S.1973.

Since the phrase "credit transactions of the same kind" is not included in the definition of a credit transaction under the CCPA, we must interpret this phrase without the aid of federal guidelines. While the Whites sold the Varadys improved land and the prior sales conveyed unimproved lots, the presence or absence of improvements is not a critical factor in determining whether transactions are of the same kind. All the sales consisted of an "interest in land" purchased primarily for a personal, family, or household use under § 5–2–104(1)(c), C.R.S. 1973.

■ The two sales in 1974 and the sale to the Varadys in 1976 involved second deeds of trust, while the other three sales in 1976 involved first deeds of trust. However, the Whites were the creditors in each of the transactions, so the form of the security interest is not determinative of this issue. Although these six transactions were not identical in each minute detail, we conclude, as a matter of law, that they were "credit transactions of the same kind." Therefore, since the Whites regularly engaged in credit transactions of the same kind, their sale to the Varadys was a "consumer credit sale" under § 5–2–104(1)(a), C.R.S.1973.

## II.

Since the Varady-White transaction was a consumer credit sale of an interest in land, the debtors have rescission rights under § 5–5–204, C.R.S.1973. *Varady I, supra.*[1] This section permits the debtor to rescind the transaction "until midnight of the third business day following the consummation of the transaction or the deliv-

ery of the disclosures required under this section ... whichever is later ...." When a debtor rescinds, § 5–5–204(2), C.R.S.1973, affords him a number of rights. First, he is not liable for any credit service charge, and any security interest given by the debtor becomes void upon the rescission. Second, within ten days after receipt of a notice of rescission, the creditor must return to the debtor "the money or property given as earnest money, down payment, or otherwise," and must terminate any security interest created under the transaction. And third, upon the performance of the creditor's obligations, the debtor must tender the property to the creditor, and unless the creditor takes possession of the property within ten days after tender by the debtor, the debtor may keep the property without paying for it.

These statutory provisions were applied in *Strader v. Beneficial Finance Co.,* 191 Colo. 206, 551 P.2d 720 (1976), in which the creditor failed to comply with its statutory obligation to disclose in a timely manner the interest rate on a home improvement loan. The debtors were permitted to retain the unpaid balance of the loan. In that case, the creditor made the proper disclosures eleven months after the transaction, and the debtors exercised their right to rescind within three days. Accordingly, it is irrelevant that the Varadys did not explicitly tender the property upon notice of intent to rescind, since the obligation to tender arises only after the security interest is released. *Strader, supra.* The statutory duty to tender does not arise until after the creditor has released his security interests. Section 5–5–204(2), C.R.S.1973.

■ Where, as here, the creditors have not made the disclosures required by the UCCC, the debtors are at liberty to rescind the contract at their pleasure. *Sosa v. Fite,* 498 F.2d 114 (5th Cir.1974). Since the Varadys gave the Whites notice of their intent to rescind within three days of closing, and

---

1. In *Varady I,* the Whites argued that even if the UCCC applies to the transaction, § 5–5–204, C.R.S.1973, does not apply because of the exclusion for first liens in § 5–5–204(5), C.R.S. 1973. Our decision that the transaction involved a second lien, and therefore that the transaction was not within the exception set out in § 5–5–204(5), is the law of the case.

the Whites did not return the Varadys' payments and terminate their security interest within ten days of the notice of rescission, the Whites must return all money paid to them by the Varadys, and ownership of the property vests in the Varadys without their obligation to pay for it. Section 5–5–204(2), C.R.S.1973; *see Strader, supra.*

In *Strader,* the court held that § 5–5–204, C.R.S.1973, "is intended as an impetus for the creditor to take immediate action to clear title and to fulfill its obligations. If not interpreted in this way, there is no stimulus for the creditor to comply with the statutory provisions requiring him to release the security interests within the ten-day period." [2] The court embraced the reasoning in *Sosa, supra,* which requires strict compliance, and rejected the equitable approach represented by *Palmer v. Wilson,* 502 F.2d 860 (9th Cir.1974). *See* Note, *Consequences of the Creditor's Failure to Acknowledge Rescission by the Debtor Under Strader v. Beneficial Finance Co.,* 48 U.Colo.L.Rev. 437 (1977).

The Whites were subject to a statutory duty to inform the Varadys of their right to rescind the transaction. Thus, it is irrelevant that Wanda Varady was a real estate agent licensed in Arkansas who was apparently aware of her right to rescind. There is no indication in the statute that the General Assembly intended to make special rules for consumers who happen to know their rights. Similarly, although the Whites did not act purposefully to deprive the Varadys of their rights, it is up to the creditor to avoid forfeiture by complying with the UCCC. The creditors' "lament of any inequity being visited upon them is utterly unpersuasive, for the power was completely theirs to prevent this parade of creditor horribles from ever occurring." *Sosa, supra.* In short, all the Whites had to do to avoid this result was to follow the law. Note, *U.Colo.L.Rev., supra.*

The judgment is reversed and the cause is remanded with directions to enter judgment consistent with this opinion.

TURSI, J., concurs.

VAN CISE, J., dissents.

VAN CISE, Judge, dissenting:

I respectfully dissent from both I and II of the majority opinion.

I.

In *Varady I,* this court remanded this case for the trial court to determine whether the Whites' sale of their home was a "consumer credit sale" as defined in § 5–2–104(1)(a), C.R.S.1973. The court correctly found that it was not.

Under the statute, to be a "consumer credit sale" of an interest in land, credit must have been "granted or arranged by a person who *regularly engages* as a seller in *credit transactions of the same kind.*" (emphasis supplied) Relying primarily on *Eby v. Reb Realty, Inc.,* 495 F.2d 646 (9th Cir. 1974), the majority holds that the Whites were "regularly engaged" in such transactions.

However, as described by the court, the seller in *Eby* was a real estate broker and, as such, constantly dealt with credit, either as principal or in assisting purchasers, and could be expected to be familiar with the general requirements of the statute and to be capable of implementing its requirements. By contrast, the Whites were not realtors, he was employed full time as an electronic technician and she was a housewife. Neither had had any prior financing experience. Hence neither qualify as a person "regularly engaged" in credit transactions. *See Dorsey v. Beads,* 288 Md. 161, 416 A.2d 739 (Md.1980).

Further, the sale of their home was not a "credit transaction of the same kind." In

---

**2.** In *Strader,* the debtors sought and the court awarded the release of the security interest in the debtors' home. However, under § 5–5–204(2), C.R.S.1973, the debtors are also entitled to the return of the money given "as earnest

money, down payment, *or otherwise.*" (emphasis added). Thus, the Varadys are entitled to a return of all the money they paid to the Whites. *Sosa, supra.*

1969, the Whites bought about 90 acres of land in Douglas County and built their house on that land. In 1974, they subdivided the acreage into about 16 lots, including their home site. By the time of the 1976 sale of their home to the Varadys, they had sold five of the unimproved lots, in each instance taking back first deeds of trust for the unpaid balance of the purchase price.[3]

At the time of the home sale, that property was subject to a first deed of trust to secure a loan from Mr. White's credit union. Therefore, as found by this court in *Varady I,* the Whites took back a second deed of trust from the Varadys—and it did not become a first until the credit union loan was paid off and released two months later.

Therefore, the home sale and credit transaction incident thereto was not "of the same kind." "Same" means "resembling in every way," "not different in relevant essentials at one time," "conforming in every respect," "identical," "corresponding so closely as to be indistinguishable." *Webster's Third New International Dictionary.* Here, it was unlike any other transaction. It was the only sale of a residence. It was the only sale that did not include a release of a preexisting first deed of trust at or about closing time. The loan terms were different.

I would *affirm* the judgment of the trial court.

## II.

If this was a consumer credit sale, the Varadys have a right to rescission under § 5–5–204(1), C.R.S.1973. The Varadys notified the Whites that they were rescinding. Under a belief (shared by both trial judges in this case) that they had no such duty, the Whites have not returned the $25,000 down

payment and (until a cash sale, release, and escrow without prejudice were stipulated to during this litigation) have taken no action to terminate the $135,000 security interest in the property. The Varadys retained possession of the property (until the stipulated sale) and have made no payments on the loan. At no time have the Varadys offered to return the property or the sale proceeds.

The statute, § 5–5–204(2), C.R.S.1973, does not say what should happen if the creditor, because of a good faith belief that the debtor has no right to rescind, does not return the money paid and terminate the security interest within ten days after receipt of the notice of rescission. The majority holds that since the "Whites did not return the Varadys' payments and terminate their security interest within ten days of the notice of rescission, the Whites must return all money paid to them by the Varadys, and ownership of the property vests in the Varadys without their obligation to pay for it." I do not agree that the Varadys are entitled to keep the property or its proceeds.

The majority relies on *Sosa v. Fite,* 498 F.2d 114 (5th Cir.1974), and *Strader v. Beneficial Finance Co.,* 191 Colo. 206, 551 P.2d 720 (1976),[4] which in turn relied on *Sosa.* *Sosa* can be distinguished from the present case in that the debtor in *Sosa* included in his notice of rescission an offer to pay to the creditor the reasonable value of the property involved. Also, *Sosa* is no longer followed, even in the Fifth Circuit. *See Bustamante v. First Federal Savings & Loan Ass'n,* 619 F.2d 360 (5th Cir.1980); *Harris v. Tower Loan of Mississippi, Inc.,* 609 F.2d 120 (5th Cir.1979), cert. denied, 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980); *Gerasta v. Hibernia National Bank,* 575 F.2d 580 (5th Cir.1978).

3. In two instances, releases of a preexisting deed of trust were obtained with the purchase money and recorded not more than seven days after closing. It was unrefuted that this procedure is customary and that the release is considered to be in effect simultaneous with the closing transaction.

4. In 1981 the general assembly amended the statute under which *Strader* was decided to

provide that the section on debtor's rights to rescind does not apply to "[a] transaction in which a mortgage, deed of trust, purchase money security interest arising under an instalment sales contract, or equivalent consensual security interest is created or retained against the debtor's dwelling to finance the acquisition or initial construction of such dwelling." Section 5–5–204(5), C.R.S.1973 (1981 Cum.Supp.).

To the same effect, holding that even where, as here, the debtor sued to enforce his rights to return of the money paid and cancellation of the security interest, the debtor still had to tender back the property upon the creditor's performance of his duties, *see Rudisell v. Fifth Third Bank,* 622 F.2d 243 (6th Cir.1980); *LaGrone v. Johnson,* 534 F.2d 1360 (9th Cir.1976); *Palmer v. Wilson,* 502 F.2d 860 (9th Cir.1974); *Anderson v. Lester,* 382 So.2d 1019 (La.App.1980); *Turner v. West Memphis Federal Savings & Loan Ass'n,* 266 Ark. 530, 588 S.W.2d 691 (Ark.1979).

The statute does not void the principal obligation along with the security. Section 5–5–204(1), C.R.S.1973. The debtor still has the duty to tender the property or its reasonable value, although he can retain possession until the creditor has performed. Only if the creditor does not take possession of the property within ten days after tender does the debtor become the owner free of any obligation to pay for it. Section 5–5–204(2), C.R.S.1973.

An action to rescind is an equitable proceeding and the court should seek an equitable solution to the problem. *Palmer v. Wilson, supra; Gerasta v. Hibernia National Bank, supra; Rudisell v. Fifth Third Bank, supra.* In *Strader v. Beneficial Finance Co., supra,* the creditor's violations of the disclosure requirements were so flagrant and continuous that cancelling the debt without necessity for repayment was a fair and equitable result, although questionable under the strict wording of the statute requiring tender. However, in the instant case none of the parties performed their obligations, none acted in bad faith, and it is inequitable to require the creditors to return the money paid plus giving the debtors the property (or the proceeds) free and clear without allowing the creditors to retrieve their property after proper tender. *See Bustamante v. First Federal Savings & Loan Ass'n, supra.*

On the assumption that this was a consumer credit sale and in view of the fact of the stipulated sale and escrow of the proceeds, this court should remand the cause to the trial court with directions (1) to determine the reasonable value of the property at the time the notice of rescission was received and (2) to enter an order (a) confirming the release of the Varadys' deed of trust, (b) directing payment out of the escrowed funds of the $25,000 down payment with interest from date of receipt of notice of rescission plus all of the Varadys' costs in this litigation, (c) to pay the balance of the escrowed funds (up to the figure determined to be the value of the property) to the Whites. *See Palmer v. Wilson, supra; LaGrove v. Johnson, supra; Rudisell v. Fifth Third Bank, supra; Harris v. Tower Loan of Mississippi, Inc., supra; Gerasta v. Hibernia National Bank, supra.* This result would give to both parties the substantial equivalent of what they had before entering into the transaction, with any loss to be on the Whites—which is what rescission is intended to accomplish. The contrary result, as provided for in the majority opinion, bestows a huge windfall on the Varadys while unfairly penalizing and imposing an unconscionable forfeiture on the Whites.