**Eunice M. ROBINSON, Plaintiff–Appellant and Cross–Appellee,**

v.

**LYNMAR RACQUET CLUB, INC., a Colorado corporation, d/b/a Lynmar Racquet and Health Club and Lynmar Racquet and Health Club., Inc., Defendant–Appellee and Cross–Appellant.**

No. 92CA0460.

Colorado Court of Appeals, Div. I.

March 11, 1993.

Frederick W. Newall, Colorado Springs, for plaintiff-appellant and cross-appellee.

Alpern, Johnson, Myers, Stuart & Finlayson, Jack J. Scheuerman, Colorado Springs, for defendant-appellee and cross-appellant.

Opinion by Judge DAVIDSON.

From a judgment entered after a bench trial awarding plaintiff, Eunice M. Robinson, $250 statutory damages, costs, and attorney fees against defendant, Lynmar Racquet Club, Inc., for its violation of the Colorado Consumer Protection Act, § 6–1–101, et. seq, C.R.S. (1992 Repl.Vol. 2) (CCPA), both Robinson and Lynmar appeal. We affirm.

Robinson signed a membership application to join Lynmar Racquet Club in September 1986. That application required payment of an initiation fee, which was paid as a gift to her by a family member, and monthly dues. Although the application provided that she could cancel her membership before the end of any month without further liability, it did not give notice of her right to rescind as required of such contracts by the CCPA.

In January 1989, Robinson terminated her membership. Because at the time she cancelled she was two months in arrears and refused to pay, Lynmar brought an action against her through a collection agency for the back payments.

Then, in September and October 1989, Robinson sent two written notices of rescission to Lynmar, at which point Lynmar stopped its collection efforts, but did not agree to rescission.

Thereafter, Robinson sued Lynmar in county court for rescission of the contract and, pursuant to the CCPA, for damages, costs, and fees for alleged deceptive trade practices. That action was premised on the health club's failure to provide notice of Robinson's right to rescind and its failure to agree to a rescission and a refund of Robinson's payments as set out in § 6–1–105(1)(t)(I), (II), and (IV), C.R.S. (1992 Repl. Vol. 2). That individual action was consolidated with a similar action Robinson had filed in district court seeking class action status.

Upon motion by Lynmar, the trial court dismissed the class action allegations. Then, after a trial to the court, it granted judgment in favor of Robinson, finding that Lynmar had committed a deceptive trade practice by failing to give notice of Robinson's right to rescind and awarded her $250 statutory damages plus $4246 in costs and attorney fees pursuant to § 6–1–113, C.R.S. (1992 Repl.Vol. 2). However, the court found that Robinson, having previously cancelled the contract, was not entitled to rescind and that, thus, Lynmar had not committed further deceptive trade practices by refusing to rescind the contract and to refund payments.

I.

■ Robinson first contends that the trial court erred by denying certification of the proposed class of similarly situated plaintiffs. Specifically, she argues that the trial court erroneously interpreted the damages provision of the CCPA to exclude members of a class from entitlement to certain statutory damages or, alternately, that, contrary to the trial court's conclusions, the requirements of class certification were met. We disagree.

■ C.R.C.P. 23 provides the procedural standards for filing and maintaining a class action. As is pertinent here, C.R.C.P. 23(a) permits a member of a class to sue as a representative party on behalf of all members only if: (1) The class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Mountain States Telephone & Telegraph Co. v. District Court*, 778 P.2d 667 (Colo.1989).

■ The burden of demonstrating that a class should be certified rests upon the class action advocate. *Villa Sierra Condominium Ass'n v. Field Corp.*, 787 P.2d 661 (Colo.App.1990). Whether to certify a class action is a matter within the discretion of the trial court, and its decision will not be disturbed unless it is clearly errone-

ous and an abuse of discretion. *Friends of Chamber Music v. City & County of Denver,* 696 P.2d 309 (Colo.1985).

The sole factual basis of the class action, as alleged in Robinson's complaint, was that, for the four-year period from December 1985 to the time of the action, she and "all others similarly situated" had signed contracts with Lynmar that contained no notice of their right to rescind, as required by the CCPA.

She alleged further, on her own behalf, that Lynmar had committed additional deceptive trade practices by refusing to rescind her contract and to give restitution of her total membership payments of $1,100.41. She did not allege that Lynmar had refused to rescind any contracts but her own. Importantly, she did not allege any actual damages to herself or to members of the class.

On both her behalf and that of the class, Robinson asserted two claims for relief against Lynmar for its commission of the deceptive trade practices: rescission of the contracts and restitution, and "actual damages or two hundred and fifty dollars ($250), whichever is greater under the CCPA."

In denying certification of the class, the court interpreted the damages provision of the CCPA, § 6-1-113, to require members of a class action bringing a claim under the CCPA to prove actual damages, while an individual plaintiff is entitled to $250 without such proof. Based, in part, on this dissimilarity, the trial court dismissed the class action allegations, concluding that Robinson's claims were not typical of the class and that she could not fairly and adequately represent the class.

Robinson contends that the trial court erroneously construed § 6-1-113. Specifically, she argues that members of a class are entitled to the $250 statutory damages set forth in § 6-1-113. We disagree.

Section 6-1-113, in relevant part, states:
(1) The provisions of this article shall be available to any person in a civil action for any claim against any person who has engaged in [any] deceptive trade practice listed in section 6-1-105 or 6-1-105.5.
(2) *Except in a class action,* any person who, in a private civil action, is found to have engaged in [any] deceptive trade practice [shall] be liable in an amount equal to the sum of:
(a) Three times the amount of actual damages sustained or two hundred fifty dollars, whichever is greater; and
(b) In the case of any successful action to enforce said liability, the costs of the action together with reasonable attorney fees as determined by the court. (emphasis added)

By its plain language, this statute establishes a defendant's liability in a private civil action for commission of deceptive trade practices and sets forth the damages available to an individual plaintiff. Contrary to Robinson's assertions, it expressly excludes members of a class from benefitting from damages provided in subparagraphs (2)(a) and (b). Thus, as is relevant here, although an individual plaintiff may be awarded $250 under the provision without proof of actual damages, class action members may not.

We observe that, although the statute does not preclude class members from bringing an action for actual damages, Robinson alleged no actual damages in her complaint and her arguments have focused on their entitlement, not to actual damages, but rather to the $250 provided by statute. Thus, we conclude that the trial court's analysis was correct. *See Cribb v. United Health Clubs Inc.,* 336 Pa.Super. 479, 485 A.2d 1182 (1984) (in a class action it must appear that the relief is beneficial to all class members).

■ Robinson argues, nonetheless, that because of the common claim for relief for rescission and the common questions of law or fact regarding Lynmar's failure to give notice, the court erred in finding that Robinson's claim was not typical of the class. We disagree that there was error.

In her complaint, Robinson alleged that Lynmar committed deceptive trade practices against all of the plaintiffs by failing to provide notice of their right to rescind.

However, Robinson's allegations that Lynmar committed additional deceptive trade practices by refusing to rescind her contract and refusing to restore her payments pursuant to § 6–1–105(1)(t)(I) and (IV) were made only on her own behalf. She did not allege that any members of the class except herself had requested or been denied rescission or restitution.

■ Moreover, if a would-be representative brings into the controversy considerations unique to that individual, which may be conclusive as well, such a plaintiff is not typical and cannot be certified as a class representative. *Berco Resources, Inc. v. Louisiana Land & Exploration Co.,* 805 P.2d 1132 (Colo.App.1990).

Here, at the time the court denied certification, it considered other fundamental dissimilarities in the claims, including whether the action was barred by the applicable statute of limitations and whether, with respect to Robinson only, such bar was tolled by an alleged mental disability. It concluded that, under these circumstances, Robinson's claims were not typical.

On this basis, we cannot say that the trial court's denial of certification of the class was "clearly erroneous" or that it was an abuse of discretion. *Friends of Chamber Music v. City & County of Denver, supra.*

■ Insofar as Robinson argues that the trial court's failure to allow discovery regarding class certification resulted in Robinson's inability to substantiate her allegations that the class action was maintainable, we disagree.

Here, the trial court's conclusion was based on its determination that certain statutory damages were not available to the proposed class and that the timeliness of Robinson's action depended on considerations unique to her. We conclude that neither are matters for which discovery could have made a difference. Therefore, we will not disturb the trial court ruling. *See Villa Sierra Condominium Ass'n v. Field Corp., supra: Levine v. Empire Savings & Loan Ass'n,* 197 Colo. 293, 592 P.2d 410 (1979) (evidentiary hearing not required where allegations lacked factual support for the class action and advocate relied on legal argument and mere mimicry of C.R.C.P. 23).

## II.

■ Robinson next argues that the trial court erred by not allowing her to rescind the contract as provided in the CCPA. We disagree.

■ Rescission is an equitable termination of a contract whereby all rights, both past and present, arising under the contract are void. *H & K Automotive Supply Co. v. Moore & Co.,* 657 P.2d 986 (Colo.App.1982). The party seeking restitution must return the opposite party to the position it occupied prior to entering into the contract. D. Dobbs, *Remedies* § 9.4 (1973); *Varady v. White,* 661 P.2d 284 (Colo.App.1982).

Here, however, it is undisputed that Robinson cancelled her membership contract in January 1989. Thus, when Robinson sought to rescind the contract several months later, there was no contract to rescind nor any obligations of which to be relieved. Moreover, Robinson would have been unable to restore to Lynmar her use of its facilities and services which she had received over the course of the contract. Thus, she could not return Lynmar to its precontract status and rescission is barred by her inability to do so. *See Varady v. White, supra* (parties are to be put in a position as if no contract existed).

We, therefore, find no error with the determination by the trial court that since the membership was already terminated, it could not be rescinded and that the 1989 notices of rescission were of no force and effect.

■ Because of our conclusion, we also disagree with Robinson's assertion that Lynmar's refusal to grant rescission and to refund her payments were additional deceptive trade practices pursuant to § 6–1–105, C.R.S. (1992 Repl.Vol. 2) for which Lynmar was liable to Robinson.

## III.

■ Robinson further contends that the trial court erred by not entering judgment for $2000 payable to the state under § 6-1-112, C.R.S. (1992 Repl.Vol. 2), which permits civil penalties to be assessed against one who violates the CCPA. However, Robinson did not pray for such relief and argues now for the first time that the civil penalties provision, § 6-1-112, which is clearly enforceable by the attorney general, is also enforceable by a plaintiff in a private cause of action.

Because she raises this issue for the first time on appeal, we decline to address it. *See Bank of America National Trust & Savings Ass'n v. Denver Hotel Ass'n,* 830 P.2d 1138 (Colo.App.1992).

## IV.

■ Robinson finally contends that the trial court erred by awarding her only a portion of her reasonable costs and attorney fees. We disagree.

Section 6-1-113(2), C.R.S. (1992 Repl.Vol. 2) states: *"Except in a class action,* any person who, in a private civil action, is found to have engaged in [any] deceptive trade practice [shall] be liable [for] the costs of the action together with reasonable attorney fees as determined by the court." (emphasis added)

By its plain language, the damages in a private civil action includes costs and attorney fees except in a class action. Nor is there any other provision awarding costs and attorney fees to class action members in CCPA actions. And, such fees must be reasonable "as determined by the court."

■ The determination of reasonableness is a question of fact for the trial court and will not be disturbed on review unless it is patently erroneous and unsupported by the evidence. *Hartman v. Freedman,* 197 Colo. 275, 591 P.2d 1318 (1979).

■ If, as here, the statute pursuant to which an award of such fees is made does not provide a specific definition of reasonable, then such compensation should be determined in light of all circumstances for the time and effort reasonably expended by the prevailing party's attorney. *Spensieri v. Farmers Alliance Mutual Insurance Co.,* 804 P.2d 268 (Colo.App.1990). The trial court may consider, among other factors, the amount in controversy, the length of time required to represent the client effectively, the complexity of the case, and the value of the legal services to the client. *Hartman v. Freedman, supra.*

Here, Robinson's attorney presented evidence that he had worked approximately 88 hours on the case. The trial court subtracted 11.5 hours for that portion of time attributable to the class action and then awarded attorney fees for only 35 of the approximately 77 remaining hours.

The court, while not questioning that the attorney had actually spent that much time on the case, determined that the case had been unnecessarily complicated by the removal from the county court to the district court for the class action, that it was plaintiff who asked to remove the case, and that plaintiff did not prevail on the class action. Moreover, it considered the actual recovery sought and obtained in arriving at what, "under the circumstances of this case, [is] a fair, reasonable attorney fee award."

Because the statute specifically excludes attorney fees for class actions and because the trial considered appropriate factors with respect to its final determination of reasonable hours spent, we will not disturb the trial court's determination on appeal. *Spensieri v. Farmers Alliance Mutual Insurance Co., supra.*

## V.

■ On cross-appeal, Lynmar contends that the trial court erred by determining that Robinson's action did not accrue until 1989 and was not barred by the applicable statute of limitations. Specifically, Lynmar argues that the action accrued in September 1986 when Robinson signed a membership agreement which contained no notice of her right to rescind. Lynmar, assuming a three-year statute of limitations, thus asserts that Robinson's action—brought three years and three month later—was barred. We disagree.

■ In resolving issues concerning limitations of actions, the statute in effect on the date when the claim accrues governs. *See Callaham v. First American Title Insurance Co.*, 837 P.2d 769 (Colo.App.1992).

■ In September 1986, the CCPA, as then in effect, did not contain a limitations provision. Thus, the general statute of limitations, § 13–80–108, C.R.S. (1987 Repl. Vol. 6A), set forth the applicable rule. That statute provided that a cause of action for fraud, misrepresentation, concealment, or deceit accrues on the date such misconduct "is discovered or should have been discovered by the exercise of reasonable diligence." *See People ex rel. MacFarlane v. Alpert Corp.*, 660 P.2d 1295 (Colo.App. 1982).

In 1987, the CCPA was amended and a limitations provision, § 6–1–115, C.R.S. (1992 Repl.Vol. 2), was added. That provision provides that an action under the CCPA must be commenced within three years after the date on which the deceptive practice occurred or the date on which the last in a series of such deceptive practices occurred or "within three years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence" of the deceptive practice.

Thus, under either statute, an action such as this accrues when the plaintiff discovers or should have discovered the misconduct in question.

Here, it is undisputed that, at the time Robinson joined, Lynmar failed to notify her of her right to rescind. The trial court found that this constituted a deceptive trade practice under the CCPA. Moreover, it determined that Robinson received no copy of the contract or of Lynmar's rules and regulations, that Lynmar did not include a notice of the right to rescind in any contracts until mid–1988, and further that: "Since [Robinson] was not unhappy with [Lynmar], she was not inclined to know of her rights to rescind until 1989, when Lynmar brought an action against her for back dues." We infer from this a finding by the trial court that Robinson neither knew nor should have known of her right to rescind until 1989.

Her action, therefore, accrued in 1989, and, having been filed in December 1989, was timely brought under either § 6–1–115 or the former statute, § 13–80–101(1)(c), C.R.S. (1987 Repl.Vol. 6A).

In view of our conclusion, we need not address Lynmar's contention that the trial court erred in finding that a failure to give notice is continuous and ongoing.

## VI.

■ Lynmar further contends that the trial court erred by awarding damages based on the 1987 version, rather than the 1986 version, of the CCPA. Specifically, Lynmar argues that because the events upon which this action is based—Lynmar's failure to give notice of right to rescind—occurred in September 1986, the damages provision of the 1986 version governs. We disagree.

Under the earlier version of the statute, Robinson would have been entitled to damages, costs, and attorney fees only if she could prove actual damages. Because, as the trial court found, Robinson suffered no actual damages, Lynmar argues that under this earlier provision Robinson would not have been awarded any damages and, because she would not have been the prevailing party, would have had to pay Lynmar's costs and attorney fees.

In 1987, however, the damages provision was expanded to include treble damages or a $250 statutory award. The trial court, applying this later version, awarded to Robinson $250, costs, and attorney fees. We disagree that the trial court erred in so doing.

■ The Colorado Constitution prohibits the General Assembly from passing civil laws that operate retroactively. *People v. District Court*, 834 P.2d 181 (Colo.1992); Colo. Const. art. II, § 11. However, procedural or remedial statutes which do not affect preexisting rights or obligations may be applied retroactively. *State Board of Equalization v. American Airlines, Inc.*, 773 P.2d 1033 (Colo.1989); *Continental Ti-*

*tle Co. v. District Court,* 645 P.2d 1310, 1315 (Colo.1982) ("[T]he abolition of an old remedy, or the substitution of a new one, neither constitutes the impairment of a vested right nor the imposition of a new duty, for there is no such thing as a vested right in remedies.").

The supreme court has held that the CCPA is remedial legislation enacted to provide prompt, economical, and readily available remedies against consumer fraud. *Western Food Plan, Inc. v. District Court,* 198 Colo. 251, 598 P.2d 1038 (1979).

Here, at the time that Lynmar failed to give notice of Robinson's right to rescind, the CCPA prohibited such conduct as a deceptive trade practice and provided a private cause of action by customers against health clubs for such acts. In 1987, the CCPA damages provision was modified to include treble and $250 statutory damages, thus adding "means of enforcing existing obligations," *see Titus v. Titus,* 96 Colo. 191, 197, 41 P.2d 244, 246 (Colo.1935); however, as is relevant here, there were no new duties imposed on health clubs in relation to their customers. Hence, there is no prohibition against application of these remedial revisions.

■ Moreover, contrary to Lynmar's contention, the mere fact that some of the operative facts occurred prior to enactment of the applicable statute does not mandate that the earlier version of the statute controls. *See Lexton–Ancira Real Estate Fund v. Heller,* 826 P.2d 819 (Colo.1992) (treble damages under the later version awarded although events occurred and action accrued prior to 1987 amendments). *Cf. Collins v. Industrial Claim Appeals Office,* 813 P.2d 804 (Colo.App.1991) (application of a statute is not erroneous merely because the facts upon which it operates occurred before adoption of the statute); *In re Marriage of Wilson,* 765 P.2d 1085 (Colo.App.1988) (long-arm statute may be applied retroactively in cases in which claim arose prior to effective date of statute if complaint was filed and service of process was accomplished after statute was enacted).

Finally, we note that Robinson's cause of action did not even exist until she discovered the deceptive trade practice in 1989, long after the 1987 amendments became effective. *See Callaham v. First American Title Insurance Co., supra* (in determining that a later statute of limitation applied, the court reasoned that although conduct giving rise to claim occurred in 1985, plaintiff's claim was not in existence until plaintiff discovered the conduct and injuries).

We conclude, therefore, that the trial court did not err by applying the 1987 version of the CCPA in awarding damages.

## VII.

■ Insofar as Lynmar argues that Robinson's contention concerning civil penalties under § 6–1–112 was frivolous and, therefore, asks for sanctions against Robinson pursuant to C.A.R. 38(d), we disagree and decline to do so.

Because of our disposition, we need not address the parties' other contentions.

The judgment is affirmed.

PIERCE and METZGER, JJ., concur.