No. C-688

**Robert I. Strader and Margaret G. Strader v. Beneficial Finance Company of Aurora, and Public Trustee of Arapahoe County**

(551 P.2d 720)

Decided June 28, 1976. Rehearing denied July 19, 1976.

208

Scott, Goddard & Bush, P.C., Greg L. Goddard, for plaintiffs-appellants.

Grant, Shafroth, Toll & McHendrie, Herbert A. Delap, for defendant-appellee.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

We granted certiorari to review a court of appeals decision in an action arising under the Uniform Consumer Credit Code, section 5-1-101 *et seq.*, C.R.S. 1973[1] (hereinafter the UCCC). It, among other things, requires an advance disclosure by lenders to borrowers of the amount of interest to be charged (being stated as A.P.R., *i.e.*, Annual Percentage Rate). The opinion of the court of appeals appears in 35 Colo. App. 284, 534 P.2d 339 (1975). We reverse.

Robert I. Strader and Margaret G. Strader, petitioners here, approached Beneficial Finance Company (hereinafter called Beneficial) by telephone in October, 1971, for the purpose of obtaining a new home improvement loan to be consolidated with a previous loan. The loan was closed on December 1, 1971, secured by a second deed of trust on Straders' residence and a security interest in their household furnishings. The principal amount of the loan was $3,974.88 with a finance charge of $1,737.12, making a total additional indebtedness of $5,712.00. Beneficial failed to disclose the annual rate of interest as required by section 5-3-302, C.R.S. 1973, making no entry in the blank provided for the disclosure on

---

[1]Formerly 1971 Perm. Supp., C.R.S. 1963, 73-1-101 *et seq.*

the statement furnished to the Straders. In June, 1972, the Colorado Uniform Consumer Credit Code Administration (UCCCA) made a routine audit of Beneficial and discovered that several disclosures, including those on the Straders' loan, had not been made. UCCCA ordered corrections. In October of 1972, a follow-up audit revealed that the corrections still had not been made. Beneficial informed the Straders of the correct percentage rate of 19.07% on or about November 17, 1972, by a handwritten note reading as follows:

"Please be advise [sic] that the APR on your Loan with us is 19.07% per Federal Law."

The Straders notified Beneficial by letter dated November 20, 1972, of their intention to rescind the loan. Beneficial took no action, and on December 7, 1972, the Straders filed a complaint with the Office of Consumer Affairs, requesting assistance in terminating the security interests held by Beneficial. Straders also stopped making loan payments to Beneficial. This action was filed by the Straders in the district court in March 1973, no agreement having been reached regarding the release of the security interests held by Beneficial, despite discussions between the parties and the Office of Consumer Affairs.

In the first of three claims for relief the Straders alleged that Beneficial had represented that the annual interest rate upon the loan would be no more than 18%, that they had relied thereon, that Beneficial failed to disclose the annual percentage rate, and that Beneficial was liable for failure to make a disclosure required by the UCCC. Straders requested damages and attorneys' fees pursuant to section 5-5-203 of the UCCC.

In their second claim, the Straders alleged that they had properly rescinded the loan pursuant to section 5-5-204 of the UCCC; that Beneficial had failed to release its security interests within the statutory period allowed; and that, therefore, Beneficial had no further claim for the unpaid balance on the loan. Straders requested an order releasing all security interests and cancellation of the debt.

The third claim for relief requested exemplary damages for willful and wanton misconduct. This claim was dismissed by the trial court, and no appeal was taken from that dismissal.

Beneficial answered the complaint raising various defenses and asserted a counterclaim for the amount of the note and interest. Straders replied that they had no further liability on the note and that, further, if the note were valid, they were entitled to a set-off under the UCCC and an award of attorneys' fees.

The trial court found that the loan involved was a consumer loan pursuant to section 5-3-104 of the UCCC; that Beneficial had failed to disclose the interest rate to Straders at the loan closing; that disclosure was not made until about November 17, 1972; and that Straders had properly rescinded the loan on November 20, 1972. The trial court also determined

that there was not sufficient evidence to support the allegation that Beneficial had represented that the interest rate would be not more than 18 percent.

The trial court concluded that the loan was governed by Part 2 of Article 5 of the UCCC; that Beneficial's failure to disclose the interest rate was in violation of the UCCC; that the violation occurred at the time of the loan closing, but that recovery of attorneys' fees and penalties pursuant to section 5-5-203(1)(a) and (b) was barred by the statute of limitations, being section 5-5-203(5) of the Act.

The court determined that the notice of rescission, mailed November 20, 1972, was effective, and that the security interests acquired in Straders' property were void. It further ruled, however, that Straders' debt was not cancelled. Beneficial was allowed recovery on its counterclaim for the principal balance of the note less a set-off of $1000 pursuant to section 5-5-205.

The court of appeals affirmed the trial court with only slight modification. The latter court held that the statute of limitations began to run on the date of the closing, that the statute was not tolled, and that there remained the obligation for payment of the principal of the note.

In the Straders' petition for certiorari they asked us, *inter alia*, to review the court of appeals' decision as it related to the statute of limitations, attorneys' fees, and the effect of rescission on the obligation on the balance of the note.

## I.

The Uniform Consumer Credit Code states:

"This code shall be liberally construed and applied to promote its underlying purposes and policies.

"The underlying purposes and policies of this code are:
* * * *

"To further consumer understanding of the terms of credit transactions and to foster competition among suppliers of consumer credit so that consumers may obtain credit at reasonable cost;

"To protect consumer buyers, lessees, and borrowers against unfair practices by some suppliers of consumer credit, having due regard for the interests of legitimate and scrupulous creditors. . . ." Section 5-1-102, C.R.S. 1973.

Relating to violations of disclosure provisions the pertinent section of the UCCC states as follows:

"5-5-203. Civil liability for violation of disclosure provisions. (1) Except as otherwise provided in this section, a creditor who, in violation of the provisions on disclosure . . . fails to disclose information to a person entitled to the information under this code is liable to that person in an amount equal to the sum of:

"(a) Twice the amount of the credit service or loan finance charge in connection with the transaction, but the liability pursuant to this paragraph (a) shall be not less than one hundred dollars nor more than one thousand dollars; and

"(b) In the case of a successful action to enforce the liability under paragraph (a) of this subsection (1), the costs of the action together with reasonable attorney's fees as determined by the court.

"(2) A creditor has no liability under this section if within fifteen days after discovering an error, and prior to the institution of an action under this section or the receipt of written notice of the error, the creditor notifies the person concerned of the error and makes whatever adjustments in the appropriate account are necessary to assure that the person will not be required to pay a credit service charge or loan finance charge in excess of the amount or percentage rate actually disclosed.[2]
* * * *

"(5) No action pursuant to this section may be brought more than one year after the date of the occurence [sic] of the violation.
* * * *

Section 5-5-205 states:

"Refunds or penalties to which the debtor is entitled pursuant to this part 2 may be set off against the debtor's obligation, and may be raised as a defense to a suit on the obligation *without regard to the time limitations prescribed by said sections.*" (Emphasis added.)

The trial court held that because of the provisions in section 5-5-205, the Straders were entitled to a set-off of $1,000 but because of the limitations in 5-5-203(5) the Straders' claim for attorneys' fees was barred.

The Straders argued in the court of appeals, and here, that the failure to disclose is a continuing violation of the disclosure provisions, and that the "occurrence of the violation" cannot be held to be on the date of the closing of the loan. The court of appeals affirmed the trial court, ruling that the statute of limitations began to run when the Straders executed the loan documents on November 30 or December 1, 1971. The court of appeals relied heavily upon *Wachtel v. West*, 476 F.2d 1062 (6th Cir.), *cert. denied*, 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973).

We need not reach the question and for the purpose of this case assume *arguendo* that the district court and court of appeals were correct in holding that the violation occurred at the time of loan closing. We take this position because we agree with the Straders' argument that here the statute of limitations was tolled under the doctrine of equitable estoppel.

Where, as here, a party by its acts or omissions contributes to the running of a statute of limitations, the doctrine of equitable estoppel

---

[2]"Loan finance charge," as defined in section 5-3-109(1), C.R.S. 1973, includes interest.

will prevent its raising that defense. *DiSalle v. Giggal*, 128 Colo. 208, 261 P.2d 499 (1953); *Mercantile Co. v. Fox*, 77 Colo. 90, 234 P. 464 (1925). Similarly it has been held that a party will not be heard to plead the statute of limitations if he himself is not in compliance with his statutory duty. *Alfred v. Esser*, 91 Colo. 466, 15 P.2d 714 (1932); *Berkey v. County Commissioners*, 48 Colo. 104, 110 P. 197 (1910).

■ The UCCC imposes an affirmative duty of disclosure on creditors. By its continued breach of its duty, even after being ordered to take corrective action by the UCCCA, Beneficial delayed the Straders' knowledge of the true 19.07% interest rate for a period of 5 1/2 months. To permit Beneficial to raise the statute of limitations to bar the Straders would be unjust. To allow Beneficial to benefit from its own wrongdoing by its failure to comply with its statutory duty of disclosure would be highly inequitable.

■ We hold, therefore, that the Straders were not barred by the statute of limitations in their demand for attorneys' fees. Upon remand, the trial court must make a finding as to, and award, the reasonable value of legal services rendered, hearing further evidence if necessary.

II.

We next address ourselves to the issue as to the remaining obligation, if any, to pay the principal balance of the note. The Straders argue that, under the facts of this case and contrary to the decisions of the trial court and the court of appeals, section 5-5-204 of the UCCC relieves them from the remaining obligation on the note.

The trial court properly held that section 5-5-204(1) allows for a rescission of a consumer loan transaction in which a security interest is retained in land used as the debtor's residence. The right to rescind must be exercised, pursuant to the provisions in that section within three days of the "consummation of the transaction or the delivery of the disclosures required . . . whichever is later. . . ." Rescission is effected by the debtor's "notifying the creditor, in accordance with rules of the administrator, of his intention to do so." Section 5-5-204(1).

The Straders rely upon section 5-5-204(2) which states:

"(2) When a debtor exercises his right to rescind under subsection (1) of this section, he is not liable for any credit service charge, loan finance charge, or other charge, and any security interest given by the debtor becomes void upon the rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the debtor the money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered property to the debtor, the debtor may retain possession of it. Upon the performance of the creditor's obligations under this section, the debtor shall tender the property to the creditor, except that if return of the property in

kind would be impracticable or inequitable, the debtor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the debtor, at the option of the debtor. If the creditor does not take possession of the property within ten days after tender by the debtor, ownership of the property vests in the debtor without obligation on his part to pay for it."

The court of appeals decision ruled that, upon receipt of the notice of rescission, Beneficial was obligated to account for the payments made by Straders on the loan and to release its security interests. Also, the court noted that the proper procedure should be to credit the total of all payments made by Straders to unpaid principal on the loan. The court also stated that, under the above quoted provision, the Straders were entitled to retain possession of the principal balance of the loan pending the required performance by Beneficial. The court of appeals then held that the provisions of the code do not provide for the forfeiture by Beneficial of the remaining obligation for failure to comply with its statutory obligation. We reverse as to the last sentence.

Section 5-5-204(2) states that upon rescission, any security interest given by the debtor becomes void by law. The creditor is specifically obligated to take any action necessary or appropriate to reflect the termination of that security interest within ten days after receipt of the notice of rescission. No duty is imposed upon the debtor until after the performance of the creditor's obligations. Until the obligations are performed, the debtor, as the court of appeals held, is entitled to retain possession of any property delivered from the creditor to the debtor.

Beneficial, in the present case, did not fulfill its obligations under the statute by releasing the security interests in the Straders' furniture and home. The Straders were forced to retain counsel and resort to litigation in order to compel Beneficial to meet its statutory obligations.

The creditor is required to remove cloud on the title of the debtor's residence within ten days. Then and only then is the debtor obligated to tender. After tender by the debtor, if the creditor fails to take possession of the property tendered "ownership of the property vests in the debtor without obligation to pay. . . ." We hold that this statutory provision is intended as an impetus for the creditor to take immediate action to clear title and to fulfill its obligations. If not interpreted in this way, there is no stimulus for the creditor to comply with the statutory provisions requiring him to release the security interests within the ten day period.

*Sosa v. Fite*, 498 F.2d 114 (5th Cir. 1974) supports our holding. In that case the debtor elected to rescind a credit transaction under the same provision in the Federal Consumer Credit Protection legislation, 15 U.S.C. § 1635 (1974). Under the contract in that case, the debtor had bought aluminum siding on credit. The court held that following the rescission, and the failure of the creditor to release the security interest in the debtor's

home, the debtor was entitled to keep the aluminum siding, "without obligation . . . to pay for it." Although the court noted that Mrs. Sosa had offered at the time of notice of intent to rescind to return the aluminum siding, the court also noted that this was not a specific statutory tender. The statutory requirement of tender was excused by the creditor's own failure to comply with its statutory obligations.

We have observed in the record that during negotiations with Beneficial, after notice of intent to rescind was given, that Mr. Strader told an employee of Beneficial that if Beneficial would release the deed of trust on his home, that he would pay the principal balance. Although, as in *Sosa, supra*, this is not the statutorily required tender, the position of Beneficial as stated in the testimony of its employee, was that the deed of trust would be released only when the principal balance was paid.

We hold, as did the court in *Sosa, supra*, that the requirement of tender arises only after the security interest is released. If it is not released within the ten days following notice of rescission, the debtor is relieved of the obligation to tender and the property vests in the debtor. As used, "property" is the unpaid principal balance of the loan, and the Straders have no obligation to pay that unpaid principal.

Beneficial argues that there is a distinction between "property," and the balance of a consumer loan. In other words, Beneficial would limit "property" to that purchased on credit. We do not agree. We think the consumer borrower and the consumer buyer are to be treated the same under the statute. Section 5-5-204, C.R.S. 1973 expressly applies to consumer credit sales and consumer loans.

We are not unmindful of the provision in section 5-5-202(5), cited by Beneficial. That section states:
"Except as otherwise provided, no violation of this code impairs rights on a debt."

We simply interpret section 5-5-204(2) to be as "otherwise provided." We further note that there is a split of authority in this regard, but think the holding here is the better view in light of the purposes and policies of the UCCC. *Contra, Palmer v. Wilson*, 502 F.2d 860 (9th Cir. 1974).

The judgment is reversed and the cause returned to the court of appeals with directions to remand the matter to the trial court for proceedings consonant with the views expressed herein.

MR. JUSTICE HODGES and MR. JUSTICE LEE do not participate.