**Ronald W. HULL and Delores A. Hull, Plaintiffs-Appellants,**

v.

**BOWEST CORPORATION, Defendant-Appellee.**

**No. 79CA0756.**

Colorado Court of Appeals, Div. III.

March 18, 1982.

Rehearing Denied April 8, 1982.

Certiorari Granted July 26, 1982.

**336**

Ira M. Karet, Glenwood Springs, for plaintiffs-appellants.

Towey & Zak, William S. Silverman, Edward B. Towey, Denver, for defendant-appellee.

PIERCE, Judge.

In this action to rescind a real estate mortgage transaction pursuant to 15 U.S. C.A. § 1635(b) (West Supp. 1975–80) of the Federal Truth-in-Lending Act (TILA), plaintiffs Ronald and Dolores Hull appeal from a decree which conditioned rescission on the Hulls' tender of the unpaid principal balance. We affirm.

The following findings are supported by the record. The Hulls borrowed $145,000 to refinance their home from Bowest's assignor, Affiliated Mortgage Company. In exchange, they gave Affiliated a promissory note secured by a deed of trust. Affiliated then assigned its servicing right to Bowest Corporation and also gave the Hulls notice of that assignment. After the closing the Hulls made only three required payments.

Based on the default, Bowest obtained judicial authorization to foreclose. The property was sold at public auction to Bowest and the Hulls did not redeem.

The Hulls brought this action to set the foreclosure sale aside because of an allegedly inadequate sales price and to enforce their TILA rescission right. After Bowest had received the Hulls' notice of rescission pursuant to § 1635(a) of the TILA, it offered to effect rescission by placing the amount the Hulls had paid in escrow with a release of the deed of trust and a withdrawal of notice of election and demand for sale. This offer, however, was rejected.

I.

The Hulls contend that the trial court erred in granting rescission on the condition that the Hulls first repay the unpaid principal balance on the loan before Bowest released its security interest. The Hulls argue that because § 1635(b) of the TILA does not impose any obligations on them until after Bowest releases its security interest, any obligation imposed on the Hulls to return the unpaid principal balance could never arise, and thus, the conditional decree of rescission was inconsistent with § 1635(b) of the TILA. We do not agree.

Since this question is governed by the federal TILA the federal judiciary's interpretation of that act is persuasive. *See Colorado & Southern Ry. v. Lombardi*, 156 Colo. 488, 400 P.2d 428 (1965).

Under § 1635(a) of the TILA, every consumer debtor who pledges a security interest in residential real property must be given a notice of the right of rescission. The notice must inform the debtor that he has three days following the consummation of the transaction within which to rescind the credit transaction. 15 U.S.C.A. § 1635(a) (West Supp. 1975–80).

The trial court did not err here in holding that the notice of the right to rescission did not adequately inform the Hulls of that right. The transaction was consummated on June 5, 1975, and the notice was dated May 30, 1975, and specified that the Hulls had until midnight of June 4, 1975, to exercise that right. Consequently, although the notice otherwise complied with federal regulations, it was defective because of the dates stated therein. *See Palmer v. Wilson*, 359 F.Supp. 1099 (S.D. Cal.1973), *vacated on other grounds*, 502 F.2d 860 (9th Cir. 1974).

■ The Hulls' notice of election to rescind was given to Bowest within the mandatory statutory period. 15 U.S.C.A. § 1635(f) (West Supp. 1975–80). Thus, the trial court correctly held that the Hulls were entitled to rescind the credit transaction pursuant to § 1635(b).

Section 1635(b) of the TILA then in effect stated in pertinent part:

"When an obligor exercises his right to rescind under subsection (a) . . . he is not liable for any finance or other charge, and any security interest given by the obligor . . . becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction . . . . Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor . . . ."

We interpret that language to mean that the creditor is required to remove its lien prior to tender by the debtor. *Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir. 1980); *Ljepava v. M.L.S.C. Properties, Inc.*, 511 F.2d 935 (9th Cir. 1975).

■ The rescission contemplated by § 1635(b) of the TILA, however, has been treated as an equitable remedy. *Rachbach v. Cogswell*, 547 F.2d 502 (10th Cir. 1976). The court in equity attempts to restore the parties to the status quo. *LaGrone v. Johnson*, 534 F.2d 1360 (9th Cir. 1976). Hence, in fashioning that equitable remedy of rescission, it is within the trial court's discretion, depending upon the equities involved, to condition the § 1635(b) rescission on the debtor's tender of the loan proceeds advanced by the creditor before the creditor releases its security interest. *See, e.g., Bustamante v. First Federal Savings & Loan Ass'n*, 619 F.2d 360 (5th Cir. 1980); *LaGrone, supra; Palmer v. Wilson*, 502 F.2d 860 (9th Cir. 1974). *Cf.* Truth-in-Lending Act of 1980, Public Law No. 96–221,

§ 612(a)(4), 94 Stat. 175 (1980) (codifies equitable conditional rescission by adding to § 1635(b) "procedures proscribed by this subsection shall apply except when otherwise ordered by a court.") Accordingly, the propriety of the conditional decree of rescission depends upon the equities present in the particular case, as well as a consideration of the policy of full disclosure that underlies the TILA. *See Palmer, supra.*

The application of § 1635(b) and the harsh consequence of the creditor's forfeiture of restitution for failing to comply with § 1635(b) as invoked in *Sosa v. Fite*, 498 F.2d 114 (5th Cir. 1974) and *Strader v. Beneficial Finance Co.*, 191 Colo. 206, 551 P.2d 720 (1976), occurred because of the equities involved in each case. In both cases the notice of rescission was accompanied by the debtor's express offer to return the creditor's property. Thus, the debtor's obligation to restore the creditor to the status quo was discharged by the tender. *See Gerasta v. Hibernia State Bank*, 575 F.2d 580 (5th Cir. 1978). Such a tender was evidence that the debtor intended to pay the creditor back. Moreover, the creditors were noted in both *Sosa* and *Strader* to have been involved in continuous egregious conduct, and there the appropriate equitable result was the cancellation of the debt without the necessity of repayment.

■ Here, since there was no egregious conduct on the part of Bowest and since the equities favor Bowest over the Hulls, we hold that the trial court did not abuse its discretion in conditioning the rescission on the Hulls' repayment of the loan proceeds.

If § 1635(b) had been literally applied, Bowest not only would have never been repaid but also it would have forfeited its security interest. The trial court found, on ample evidence, that the Hulls did not intend to pay the outstanding debt. Accordingly, it entered its conditional decree. Furthermore, a judgment lien had been imposed on the Hulls' property, so that if rescission had not been made conditional, Bowest would have become subordinate to that lien. Therefore, unlike the debtors in

*Sosa* and *Strader,* the Hulls did not make an express offer to tender payment. Congress did not intend that the creditor relinquish its security interest when the debtors, as here, do not intend or are not prepared to tender restitution of the funds borrowed. *Powers v. Sims & Levin,* 542 F.2d 1216 (4th Cir. 1976).

The only wrongdoing on the part of Bowest found by the trial court and supported by the record was that, as an assignee of Affiliated, it failed to inquire as to the propriety of the notice of the right of rescission. The notice, however, was only defective because of the dates specified therein. Nothing in the record established any other wrongdoing on the part of Bowest. Moreover, Bowest offered to the Hulls rescission through an escrow arrangement. The Hulls, however, rejected that offer. Therefore, unlike the creditors in *Sosa* and *Strader,* Bowest was not involved in egregious conduct.

The Hulls also incorrectly argue that they were severely prejudiced by the trial court's failure to decree non-conditional rescission and that, had the court cleared their title, they would have had security to borrow against the property in order to pay back the loan. We doubt that it would make any difference to a lending institution whether the Hulls had clear title or if they had the conditional decree entered here.

## II.

The Hulls also argue that the trial court erred in granting conditional judgment on Bowest's counterclaim. That counterclaim stated that, in the absence of Hulls' rescission, Bowest was entitled to a deficiency judgment because of the loan transaction and the amount it paid on the foreclosure sale. Additionally, they argue that the amount calculated on the counterclaim was incorrect. We do not agree with either contention.

■ Since the Hulls failed to rescind within the terms of the conditional decree, they were still liable on the note and responsible to pay the foreclosure deficiency. There is no merit to their argument that a deficiency judgment could not be entered in the absence of the original promissory note. Section 4–3–804, C.R.S.1973, allows the trial court, in its discretion, to grant a deficiency judgment in the absence of the tender of the original note. The trial court found that sufficient evidence established the amount awarded to Bowest and the note's terms. This finding is supported by the evidence and will not be disturbed. *See Linley v. Hanson,* 173 Colo. 239, 477 P.2d 453 (1970).

■ As to the amount calculated by the trial court on the counterclaim, the amount owed by the Hulls pursuant to the note and the deed of trust were added and the amount Bowest received from the foreclosure sale and the Veteran's Administration were subtracted. This method of restoring the parties to the status quo was not erroneous.

## III.

The Hulls' final contention is that the trial court erred in disallowing their claim for attorney's fees under the TILA. We do not agree.

■ In *Rachbach, supra,* the court held that the federal courts must apply the American Rule for attorney's fees pursuant to *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 420, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Therefore, since attorney's fees are not specifically provided for in § 1635(b), they are not recoverable.

■ The court in *Rachbach, supra,* also noted that, because of *Alyeska, supra,* any reliance, as the Hulls do here, on *Sosa, supra,* for the recovery of attorney's fees in a § 1635(b) action would be misplaced. Additionally, the court in *Rachbach,* noted that *Strader, supra,* allowed the recovery of attorney's fees, but only because they were specifically allowed by § 5–5–203(1)(b), C.R.S.1973. Since the Hulls have brought this action under the federal TILA and since any claim the Hulls may have had under § 1640 of the TILA was barred by a statute of limitations, there is no applicable statuto-

ry provision that allows their recovery of attorney's fees. Hence, the trial court did not err in denying the Hulls' recovery of attorney's fees.

We are not unmindful of *Varady v. White,* —— Colo.App. —— (No. 81CA0027, Announced March 11, 1982). Although the statutes are very similar, *Varady* was decided under the provisions of § 5–1–101 et seq., C.R.S.1973. The result reached in that case is not consistent with the interpretations placed by the federal courts on 15 U.S.C.A. § 1601, et seq. *Rachbach, supra; Palmer v. Wilson, supra.*

We have examined the other alleged errors specified by the Hulls and find them to be without merit.

The judgment is affirmed.

SMITH, J., concurs.

KELLY, J., dissents.

KELLY, Judge, dissenting.

I respectfully dissent.

While the majority acknowledges the similarity between 15 U.S.C.A. § 1635(b) and § 5–5–204(2), C.R.S.1973, it nevertheless follows a line of federal cases which apply equitable principles in fashioning a remedy—a course which I believe to be foreclosed by the Colorado Supreme Court's interpretation of the statute in *Strader v. Beneficial Finance Co.,* 191 Colo. 206, 551 P.2d 720 (1976). *See also Varady v. White,* —— Colo.App. —— (No. 81CA0027, announced March 11, 1982). Neither do I agree with the majority that the Supreme Court in *Strader* reached the result it did because of the equities of the case.

It seems evident to me, upon examination of the Court of Appeals' version of *Strader v. Beneficial Finance Co.,* 35 Colo.App. 284, 534 P.2d 339 (1975), that this court was attempting to apply an equitable rule when it said:

> "Since Beneficial did not proceed as required by § 5–5–204(2), Straders were entitled to retain 'possession' of the principal balance of the loan pending the required performance by Beneficial. However, this subsection does not provide that Beneficial forfeits its right to repayment of the principal balance for failure to comply with its statutory obligations within 10 days. Further, we find no authority to sustain Straders' position that this is what the legislature intended. To the contrary, the legislature mandated that except as otherwise specifically provided in the UCCC, a creditor's violation of his obligations does not affect the debt. *See* § 5–5–202(5)."

It is equally plain to me that this "equitable" application of the statute was explicitly rejected by the Colorado Supreme Court on certiorari review.

> "We simply interpret section 5–5–204(2) to be as 'otherwise provided.' We further note that there is a split of authority in this regard, but think the holding here is the better view in light of the purposes and policies of the UCCC. *Contra, Palmer v. Wilson,* 502 F.2d 860 (9th Cir. 1974)."

The Supreme Court's view of the purposes and policies to be served by the UCCC is unmistakeable:

> "The creditor is required to remove cloud on the title of the debtor's residence within ten days. *Then and only then* is the debtor obligated to tender. After tender by the debtor, if the creditor fails to take possession of the property tendered 'ownership of the property vests in the debtor without obligation to pay . . . .' *We hold that this statutory provision is intended as an impetus for the creditor to take immediate action to clear title and to fulfill its obligations. If not interpreted in this way, there is no stimulus for the creditor to comply with the statutory provisions requiring him to release the security interests within the ten day period."* (emphasis added)

Consistent with this statement of policy, the Supreme Court held:

> " . . . as did the court in *Sosa, supra,* [*Sosa v. Fite,* 498 F.2d 114 (5th Cir. 1974)] that the requirement of tender arises only after the security interest is released. If it is not released within the ten days follow-

ing notice of rescission, the debtor is relieved of the obligation to tender and the property vests in the debtor. As used, 'property' is the unpaid principal balance of the loan, and the Straders have no obligation to pay that unpaid principal."

See Note, *Consequences of the Creditor's Failure to Acknowledge Rescission by the Debtor Under Strader v. Beneficial Finance Co.*, 48 *U.Colo.L.Rev.* 437 (1977).

I do not regard this language as supporting the view that the Supreme Court, in *Strader,* was moved by the equities of the case. Neither is there room for one interpretation of the federal statute and another of the state statute. Application to the creditor's conduct of a sliding scale of egregiousness is not my idea of a workable rule of law.