Ronald W. HULL and Delores A.
Hull, Petitioners,

v.

BOWEST CORPORATION, Respondent.

No. 82SC169.

Supreme Court of Colorado,
En Banc.

May 29, 1984.

Ira M. Karet, Glenwood Springs, for petitioners.

William S. Silverman, Denver, for respondent.

ERICKSON, Chief Justice.

The trial court conditioned Ronald and Delores Hull's (petitioners) right to rescind a real estate mortgage transaction pursuant to the Federal Truth In Lending Act (TILA), 15 U.S.C. § 1635 (1976), upon petitioners' tender of the unpaid principal loan balance. The Court of Appeals affirmed. *Hull v. Bowest Corporation,* 649 P.2d 334 (Colo.App.1982). We granted certiorari and now affirm the Court of Appeals.

### I.

The record reveals the following pertinent facts. Prior to May 30, 1975, petition-

ers filed a loan application with Affiliated Mortgage Investments, Inc. (Affiliated). Affiliated prepared the necessary loan documents for a scheduled closing on June 4, 1975. The closing did not occur, however, until June 5, 1975.

On June 5, 1975, petitioners executed a promissory note in the amount of $145,000 which was secured by a deed of trust on petitioners' residence in Grand County, Colorado.[1] Included within the closing instruments was a document entitled "Notice of Right of Rescission" which recites that the petitioners were given notice of the right to rescind on May 30, 1975 and that the loan transaction was closed on May 30, 1975. Petitioners, however, testified at trial that all the loan documents were, in fact, signed by them on June 5, 1975, and that they did not read any of the documents because they had been advised by their attorney at the closing that all the documents "were in order."[2]

On June 23, 1975, Affiliated assigned the promissory note and deed of trust to the Government National Mortgage Association (GNMA) under a pooling and guarantee arrangement. Under the agreement, Affiliated, the issuer, was authorized by GNMA to service the deed of trust, pursue collections, and exercise various other rights.

Petitioners made the required installment payments in August, September, and October 1975. Thereafter, petitioners refused to make further payments to Affiliated because Affiliated had allegedly breached an agreement to extend to petitioners a second loan which was made contempora-

---

**1.** The parties do not dispute the trial court's finding that the loan transaction was a consumer credit transaction within the meaning of 15 U.S.C. § 1635 (1976). The Veterans Administration was a partial guarantor on the loan and ultimately paid $17,500 to respondent in satisfaction of petitioners' debt.

Both the deed of trust and the promissory note were dated June 4, 1975. The original promissory note executed by the parties had been misplaced by the Grand County Public Trustee's office and was not a part of the record

at trial. A copy of the note was, however, before the trial court. The original promissory note was later recovered by the Grand County Public Trustee subsequent to our granting of certiorari in this case and is before the court at this time.

The trial court found expressly that "[t]he loan proceeds were applied to the use and benefit of the Hulls in due course."

**2.** Mr. Hull testified that he had previous experience in real estate transactions and understood the documents which he signed.

neously with the subject loan transaction.[3]

On February 27, 1976, Affiliated assigned its servicing rights to the loan to Bowest Corporation, respondent. Petitioners were notified of the assignment by letter that same day.[4]

Affiliated then commenced Civil Action No. 2708 seeking to foreclose the deed of trust encumbering the petitioners' residence. The trial court initially issued an order authorizing sale of the real estate. Petitioners thereupon filed a complaint in Civil Action No. 2730 seeking damages for breach of contract and fraud, and an injunction to enjoin the public trustee's sale of petitioners' residence. After a hearing on petitioners' request for injunctive relief, the trial court found that Affiliated was not an "interested party" authorized to foreclose the deed of trust, and vacated the previously issued order authorizing the sale.

Respondent later commenced foreclosure proceedings in Civil Action No. 2809. On June 22, 1977, an order authorizing a public trustee's sale of the real estate was issued.

Prior to the sale, petitioners, on July 11, 1977, filed an amended complaint in Civil Action No. 2730, seeking to enjoin the sale. On July 26, 1977, a hearing on petitioners' request for preliminary injunctive relief was held, and, in an order dated August 9, 1977, petitioners' motion was denied.

Prior to the issuance of the trial court's order, however, petitioners notified respondent by letter on July 27, 1977, that they were exercising their right to rescission pursuant to 15 U.S.C. § 1635.[5] On August 5, 1977, respondent replied to petitioners' request by placing into escrow a cashier's check in the amount of $6,457.37, together with a release of the deed of trust and withdrawal of notice of election and demand for sale, contingent upon petitioners' tender of the proceeds of the loan transaction. Respondent's tender of rescission was rejected by petitioners later that same day.

On August 11, 1977, petitioners filed a complaint in Federal District Court in Denver seeking once again to enjoin the public trustee's sale. After a hearing on August 12, 1977, petitioners' request for injunctive relief was denied.[6]

On August 18, 1977, the public trustee's sale was held, and respondent purchased the real estate for $152,000. Petitioners did not redeem the property.

Petitioners filed a complaint in this case on February 18, 1978, in Grand County District Court seeking to have the foreclosure sale set aside on the ground that the purchase price was inadequate. On August 18, 1978, petitioners amended the original complaint to demand not only rescis-

**3.** This dispute between the parties culminated in a $500,000 judgment for petitioners rendered on March 19, 1982.

**4.** The Veterans Administration, as partial guarantor on the original loan, informed petitioners on February 2, 1976, that petitioners should contact the mortgagee as soon as possible regarding the delinquent payments. The trial court found that there was no evidence that either GNMA or respondent had notice prior to February 27, 1976, of petitioners' delinquency on the note. The record indicates that respondent informed petitioners on March 22, 1976, that the loan was delinquent as of that date.

**5.** The record reveals that petitioners had at no time prior to July 27, 1977, raised the issue regarding respondent's failure to comply with TILA. 15 U.S.C. § 1635(b). We note that the petitioners' letter stated in pertinent part:

Upon release of the record of the deed of trust and return to my wife and me of all money or

property given by my wife and myself as earnest money, down payment or otherwise, within ten (10) days after receipt of this letter, I will tender to you at the location of the property secured by the deed of trust all property which was delivered to us as a consequence of the transaction or the reasonable value of such property if it cannot be returned in kind.

The matter was raised formally for the first time on August 11, 1977, in petitioners' complaint in Federal District Court seeking injunctive relief.

**6.** Judge Winner, in denying petitioners' request for a temporary restraining order, found that petitioners were unable to post the required bond determined by him to be "at least $145,-000" in this case. He found also that the remedy at law was adequate.

sion of the loan transaction under 15 U.S.C. § 1635(b), but also attorney fees under 15 U.S.C. § 1640.[7] Respondent generally denied petitioners' allegations and filed a counterclaim for a deficiency judgment of $6,132.69 on the note after foreclosure.

The trial court found that Affiliated's notice of right of rescission was defective, and that petitioners' right to rescission was timely filed with respondent. The trial court, however, conditioned petitioners' rescission right under TILA upon their first paying to respondent the unpaid principal loan balance.[8] The court also disallowed petitioners' claim under TILA for attorney fees.

The Court of Appeals affirmed, and ruled in part that "it is within the trial court's discretion, depending upon the equities involved, to condition the § 1635(b) rescission on the debtor's tender of the loan proceeds advanced by the creditor before the creditor releases its security interest." *Hull*, 649 P.2d at 337.

**II.**

**A.**

Petitioners assert that the trial court erred in exercising its equity powers to grant rescission conditioned upon petitioners' tendering of the unpaid principal balance to respondent. We disagree.

TILA, 15 U.S.C. § 1635(a), provides for an opportunity to rescind a consumer credit transaction in which a security interest is obtained in any real property which is used as a residence of the obligor.[9] *Dougherty v. Hoolihan, Neils & Boland, Ltd.*, 531 F.Supp. 717 (D.Minn.1982). The obligor shall have three days to rescind a transaction following the consummation of the transaction or following delivery of the disclosures required under TILA.

The creditor, within ten days after receiving notice of rescission, is required to return all money received from the borrower and to take all necessary actions to reflect the termination of any security interest created under the transaction.[10] *Busta-*

---

**7.** Petitioners' request for rescission and attorney fees was based solely on TILA; the amended complaint contains no reference to the Colorado Uniform Consumer Credit Code (U.C.C.C.) § 5-5-204, 2 C.R.S. (Supp.1983), which confers a right to rescind under state law.

**8.** The trial court stated:
> The Court concludes that the Hulls are therefore entitled to rescind the credit transaction pursuant to 15 USC § 1635 conditioned upon their repayment of the proceeds of the loan transaction to Bowest together with interest at the legal rate from November 1, 1975, to date of entry of this judgment in the total sum of $183,987.22 plus interest at the rate of $31.70 per day until paid. *Rachbach v. Cogswell*, 547 F.2d 502 (10th Cir.1976).
> . . . .
> The Court concludes that in the event the Plaintiffs do not exercise their right of rescission by complying with the conditions established herein within 30 days, the right of rescission shall expire and the trustee's sale shall be confirmed.

**9.** 15 U.S.C. § 1635(b) (1976), *amended by* 15 U.S.C. § 1635(b) (1982) provides:
> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescis-

sion. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

**10.** In 1980, Congress enacted the Truth In Lending Simplification and Reform Act, Pub.L. No. 96-221, 94 Stat. 168 (1980), which amends various rescission provisions of the original version of TILA, applicable in this case. For example, the current version of TILA grants to creditors ten additional days both to return to the obligor money upon receipt of the obligor's notice of rescission and to take possession of the returned property after tender to the obligor. Most im-

*mante v. First Federal S. & L. Ass'n*, 619 F.2d 360 (5th Cir.1980). Once a creditor has performed these duties, the borrower is required to tender any of the loan proceeds received from the creditor. *Gerasta v. Hibernia Nat. Bank*, 575 F.2d 580 (5th Cir. 1978).

■ If the required disclosures are never made, the obligor has a continuing right to rescind. *Rudisell v. Fifth Third Bank*, 622 F.2d 243 (6th Cir.1980). This continuing right to rescind terminates within three years after the consummation of the transaction, whether or not disclosures have been made.[11]

■ It has, however, been recognized that rescission under TILA is an equitable remedy and that courts may condition rescission upon return to the creditor of property or money received or the reasonable value of the property. *Rudisell*, 622 F.2d 243; *Rachbach v. Cogswell*, 547 F.2d 502 (10th Cir.1976) (rescission is an equitable remedy); *Powers v. Sims & Levin*, 542 F.2d 1216 (4th Cir.1976); *Palmer v. Wilson*, 502 F.2d 860 (9th Cir.1974); *Turner v. West Memphis Federal Sav. & Loan Ass'n*, 266 Ark. 530, 588 S.W.2d 691 (1979) (the mechanics of rescission under TILA are not necessarily bound to proceed in the exact manner in which they are set out in the Act). Since an action to rescind under TILA is an equitable proceeding, a court should consider not only the violations by the creditor, but also the course of action taken by the debtor. *Turner*, 588 S.W.2d 691.

■ As a preliminary matter, we note that our holding in this case is based exclusively upon our review of TILA. There is nothing in the record here to suggest that the Colorado Uniform Consumer Credit Code, §§ 5–5–201 *et seq.*, 2 C.R.S. (1973) (U.C.C.C.), was before the trial court in this case.[12] Our reading of the record, particularly the trial court's findings of fact and conclusions of law, indicates that the trial court did not consider, nor was it requested to consider, either the U.C.C.C. or this state's judicial interpretations of that act. In interpreting TILA, we are guided by the federal courts' interpretations of TILA. *See Colorado and Southern Railway Co. v. Lombardi*, 156 Colo. 488, 400 P.2d 428 (1965).

■ In this case, the trial court found that respondent's notice of the right of rescission did not adequately inform petitioners of their right to rescind. *See Powers v. Sims & Levin*, 542 F.2d 1216 (4th Cir.1976) (creditor inadvertently informed the consumers that they had the right to rescind within two days instead of three). *Cf. Bank of Evening Shade v. Lindsey*, 278 Ark. 132, 644 S.W.2d 920 (1983) (rescission statement not totally defective be-

---

portantly, however, Congress has, in amending section 1635(b), expressly recognized the court's discretionary exercise of equity principles: "The procedures prescribed by this subsection [15 U.S.C. § 1635(b)] shall apply except when otherwise ordered by a court." *See also* Revised Regulation Z §§ 226.23(d)(2), (3) & (4); S.Rep.No. 96–368, 96th Cong., 2d Sess. 29 (1980), U.S.Code Cong. & Admin.News 1980, pp. 236, 264–265 ("[u]pon application by the consumer or the creditor, a court is authorized to modify this section's procedures where appropriate. For example, a court might use this discretion in a situation where a consumer in bankruptcy or wage earner proceedings is prohibited from returning the property. *The committee expects that the courts, at any time during the rescission process, may impose equitable conditions to insure that the consumer meets his obligations after the creditor has performed his obligations as required under the Act*") (emphasis supplied).

11. In 1974, TILA was amended to add a three-year limitations period for the right to rescind, notwithstanding that disclosures were never made. *See* Pub.L. No. 93–495, § 405, 88 Stat. 1517, 1519 (1974) (codified at 15 U.S.C. § 1635(f) (1982)).

12. The versions of 15 U.S.C. § 1635(b) and § 5–5–204(2), 2 C.R.S. (1973), in effect at the time of the violation in this case, are identical in most important respects. We note, however, that the General Assembly, in amending section 5–5–204 in 1981 to track Congress' amendments to TILA under the Truth in Lending Simplification and Reform Act, did not adopt the final sentence now contained in the current version of section 1635(b) which grants to courts authority to modify the procedures set forth in section (b).

cause debtors not misled by what amounted to a single and obvious mistake in date). The record indicates that the notice, which was dated May 30, 1975, recited that petitioners had until midnight on June 4, 1975, to exercise the right. The transaction, however, was not consummated until June 5, 1975. Petitioners' right to rescind was, therefore, a continuing right, *Nietert v. Citizens Bank & Trust Co. of Van Buren,* 263 Ark. 251, 565 S.W.2d 4 (1978), which petitioners exercised within the three-year mandatory statutory period. *See* 15 U.S.C. § 1635(f); note 11 *supra.*

The record reveals that petitioners acknowledged on several occasions that they were unable to return the funds tendered to them originally by respondent.[13] Moreover, a judgment lien unrelated to the subject deed of trust was imposed on the property during the interim between June 5, 1975, and the foreclosure sale on August 18, 1977, and, if respondent had released its security interest in the property, its claim would have become subordinate to that intervening judgment lien. *See Powers,* 542 F.2d at 1221 ("surely the Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers"). The trial court found no wrongful conduct on the part of respondent in this case.

█ We hold, accordingly, that the trial court in this case did not abuse its discretion in conditioning petitioners' right to rescind under TILA upon the petitioners' repayment of the loan proceeds.

**B.**

█ Petitioners assert that the ruling of the trial court in this case is not in accord with the prevailing law in this state with respect to an obligor's right to rescind a consumer credit transaction. Petitioners cite *Strader v. Beneficial Finance Co.,* 191 Colo. 206, 551 P.2d 720 (1976), and *Varady v. White,* 661 P.2d 284 (Colo.App.1982), in support of their argument. The argument lacks merit.

The facts in *Strader* were that Robert and Margaret Strader received a loan on December 1, 1971, from Beneficial Finance Company (Beneficial), secured by a second deed of trust on their residence. Beneficial, however, failed to disclose the annual rate of interest as required under § 5–3–302, 2 C.R.S. (1973). The Straders became aware of the error in June, 1972, and made a demand that Beneficial comply with the statutory disclosure requirements. On November 17, 1972, after repeated requests by the Straders and the Colorado Uniform Consumer Credit Code Administration, Beneficial complied with the disclosure requirements. On November 20, 1972, the Straders notified Beneficial by letter that they intended to rescind the loan. Beneficial did not respond to the request, and the Straders filed a complaint seeking rescission of the loan agreement under § 5–5–204, 2 C.R.S. (1973). Relying heavily upon *Sosa v. Fite,* 498 F.2d 114 (5th Cir.1974),[14] we held there that Beneficial's failure to

---

**13.** The trial court found that petitioners were either unwilling or unable to repay the loan proceeds. Petitioners' counsel at the hearing before the federal district court judge indicated that petitioners were unable to post the bond required under their request for a temporary restraining order. In addition, petitioners' attempts to redeem the property after the foreclosure sale were unsuccessful because they were unable to secure the necessary financing.

**14.** In *Sosa v. Fite,* 498 F.2d 114 (5th Cir.1974), a consumer entered into a home improvement contract where aluminum siding was installed on her home and a second mortgage taken as security. Proper truth in lending disclosures were not given, and the consumer rescinded ten months after entering into the contract. At the time of rescission, she expressly tendered back the property to the creditor. The consumer received no response from the creditor and brought suit to enforce the rescission under TILA. The circuit court ruled that since the creditor had failed to perform his obligations within ten days after rescission and tender, he had forfeited the loan proceeds. The court held, in effect, that when a consumer rescinds and tenders at the same time, both ten-day periods run simultaneously. The creditor must not only terminate the agreement and return the consumer's money within ten days, but must also accept the consumer's tender of property within the same ten-day period, or forfeit it.

release its security interest relieved the Straders of their tender obligation, and said:

> The creditor is required to remove cloud on the title of the debtor's residence within ten days. Then and only then is the debtor obligated to tender. After tender by the debtor, if the creditor fails to take possession of the property tendered ownership of the property vests in the debtor without obligation to pay.... We hold that this statutory provision is intended as an impetus for the creditor to take immediate action to clear title and to fulfill its obligations. If not interpreted in this way, there is no stimulus for the creditor to comply with the statutory provisions requiring him to release the security interests within the ten day period.

*Strader*, 551 P.2d at 725.

We did not intend in *Strader* to foreclose the equitable power of a trial court to condition the equitable remedy of rescission upon the debtor's repayment of the loan proceeds, particularly where, as here, a creditor reasonably fears that it would forfeit the loan proceeds if it complied with the statutory procedure. In *Strader*, there was no factual predicate whatsoever to justify the trial court's conditioning the Straders' right to rescission upon repayment of the loan proceeds. There, the Straders' notice of rescission was followed by an express bona fide offer to return the creditor's property. The offer was evidence that the debtor intended to pay the creditor back. *Hull v. Bowest Corporation*, 649 P.2d 334 (Colo.App.1982). Further, the creditor's continuing violations in that case were sufficiently egregious to warrant unconditional cancellation of the debt. *Varady v. White*, 661 P.2d 284 (Colo.App.1982) (Van Cise, J., dissenting).

### C.

Petitioners contend that the trial court erred in disallowing their claim for attorney fees under TILA. We disagree.

In *Rachbach v. Cogswell*, 547 F.2d 502 (10th Cir.1976), the Tenth Circuit, relying upon *Alyeska Pipeline Service Co. v. Wilderness*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 41 (1975), held that attorney fees are not recoverable under 15 U.S.C. § 1635 because section 1635 contains no provision for the award of attorney fees. *But see Sosa*, 498 F.2d 114. In this case, since petitioners' claim under 15 U.S.C. § 1640 is barred by the statute of limitations contained in section 1640(e), the trial court did not err in disallowing petitioners' claim for attorney fees.

We reject petitioners' assertion that this court's decision in *Strader* conflicts with *Rachbach*. In *Strader*, we allowed attorney fees in a similar action under section 5–5–203(1)(b) which specifically authorizes the award of attorney fees "as determined by the court." Petitioners in this case, however, did not seek attorney fees under the U.C.C.C.[15]

### D.

Petitioners contend that the trial court erred in conditionally granting a deficiency judgment on respondent's counterclaim because the original promissory note was not produced. We do not agree. Section 4–3–804, 2 C.R.S. (1973), provides:

> The owner of an instrument which is lost, whether by destruction, theft, or otherwise, may maintain an action in his own name and recover from any party liable thereon upon due proof of his ownership, the facts which prevent his production of the instrument and its terms. The court may require security indemnifying the defendant against loss by reason of further claims on the instrument.

In our view, the trial court correctly found that sufficient evidence established the requisite elements necessary under section 4–3–804 to grant a deficiency judg-

---

The Fifth Circuit has since limited *Sosa* to its facts. *See Arnold v. W.D.L. Investments, Inc.*, 703 F.2d 848 (5th Cir.1983) (reaffirming holding in *Sosa*); *Bustamante v. First Federal S. & L. Ass'n*, 619 F.2d 360 (5th Cir.1980).

**15.** *See* note 7, *supra.*

ment in the absence of tender of the original note. *Hull v. Bowest Corporation*, 649 P.2d 334 (Colo.App.1982).

Accordingly, we affirm the Court of Appeals.