**In re Robert Eugene FOSTER and Frances Kay Foster, Debtors.**

**Bankruptcy No. 89–01460–C.**

United States Bankruptcy Court, N.D. Oklahoma.

Sept. 26, 1989.

Gary W. Wood, Tulsa, Okl., for debtors.

Jim D. Shofner, Tulsa, Okl., for Credit Union.

## MEMORANDUM DECISION AND ORDER

STEPHEN J. COVEY, Bankruptcy Judge.

On August 4, 1989, the Court heard Debtors' Motion to Determine Amount of Allowable Secured Claim of the Tulsa Federal Employees Credit Union ("Credit Union"). After considering the evidence and the arguments of counsel, the Court finds as follows:

The following relevant facts are undisputed:

1. On December 31, 1986, Debtors entered into a loan agreement with Credit Union to borrow the sum of $33,150.00. All of the loan proceeds were used to extinguish the first mortgage of First Bank Mortgage Company on Debtors' principal residence, except $814.39 which Debtors received for their own disbursement. The loan of First Bank Mortgage Company had been made to finance or refinance Debtors' acquisition of the residence. Debtors executed a note in the amount of $33,150.00 and a mortgage in favor of Credit Union on their principal residence to secure said note.

2. Credit Union did not give to Debtors a notice of right to rescind the loan.

3. On May 23, 1989, Debtors allege that they "exercised" their right to rescind the loan transaction "under cover of letter dated May 18, 1989." It is not clear exactly when the notice of rescission was mailed or otherwise transmitted to Credit Union nor when Credit Union received the notice, but it is undisputed that notice of rescission was given and received at approximately this time.

4. On May 23, 1989, Debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code initiating this case.

5. Debtors have made a total of $10,095.37 in payments to Credit Union, which sum includes expenses related to obtaining the loan and the monthly note payments made thereon.

6. Credit Union has not released its security interest in Debtors' principal dwelling nor returned any of the money received from Debtors pursuant to the loan transaction.

7. Debtors claimed their principal dwelling as exempt property and, because the time for filing objections to that claim of exemption has expired and no objections

thereto were filed, the principal dwelling of Debtors is exempt property.

The Court must decide two issues: (1) whether the loan was a consumer loan which gives Debtors a right of rescission under applicable law, and (2) if so, how the remedy of rescission should be enforced by this Court and consequently what is the nature and amount of Credit Union's claim herein.

■ The Court finds that under the Oklahoma Uniform Consumer Credit Code the loan was a consumer loan which Debtors are entitled to rescind.[1] It is undisputed that substantially all of the loan proceeds from Credit Union were used to refinance the original loan of First Bank Mortgage Company secured by Debtors' principal dwelling. As a result, the debt and mortgage to First Bank Mortgage Company were extinguished and a new debt and mortgage to Credit Union arose in their place. While the right to rescind does not apply to a refinancing by the *same* creditor secured by an interest in the same principal dwelling, the right of rescission clearly does apply to such a refinancing by a *different* creditor. See 15 U.S.C. § 1635(e)(1); Regulation Z, 12 C.F.R. § 226.23(f); Commentary, 12 C.F.R. Supp. I, § 226.23; *In re Rineer*, 25 B.R. 264, 267 (Bankr.N.D.Ill. 1982); and 14A O.S. § 5–204.[2] With regard to the additional $814.39 of loan money not needed in the refinancing, the Court can infer that this advance was not made for business purposes and therefore qualified as a consumer loan secured by Debtors' principal dwelling which was not exempt from the right of rescission. It is undisputed that Credit Union did not give Debtors the required notice of the right to rescind the loan transaction, and, accordingly, Debtors had the right to rescind the loan within 3 years after the loan was consummated.

■ Having determined that Debtors were entitled to rescind the loan transaction, it is undisputed that Debtors in fact properly exercised such right on or about May 23, 1989. Also on that date Debtors filed this bankruptcy case. Whatever rights and obligations Debtors had with regard to rescission became the rights and obligations of the bankruptcy estate under 11 U.S.C. § 541. Upon rescission, the claim of Credit Union was transformed from one arising under a note and mortgage to one arising under 14A O.S. § 5–204. In order to determine the nature and amount of Credit Union's claim, the Court must determine the respective rights and obligations of the bankruptcy estate and Credit Union with regard to rescission of the loan.

Normally, the procedure for rescission under 14A O.S. § 5–204(2) and the regulations promulgated thereunder, which are identical to Regulation Z, 12 C.F.R. § 226.23, is as follows:

(1) the consumer exercises his right of rescission by notifying the creditor in writ-

---

1. Oklahoma's Uniform Consumer Credit Code, 14A O.S. § 1–101 et seq. and specifically § 5–204 governing the right of rescission, was drafted to provide the consumer the same, if not greater, protection as that afforded under Federal Truth in Lending law, 15 U.S.C. § 1601 et seq. and specifically § 1635 governing the right of rescission. See Official Commentary to the statute by Bryce A. Baggett and Fred H. Miller. Because Oklahoma law provides equal protection, Oklahoma has been granted a partial exemption from Federal Truth in Lending law. See 12 C.F.R. Supp. I, § 226.29, the official commentary to the Federal Truth in Lending regulations, Regulation Z, 12 C.F.R. § 226.29.

2. Credit Union argued that, as a matter of statutory construction, under Oklahoma law the right of rescission did not apply to this loan because it was not a "consumer loan" as defined in 14A O.S. §§ 3–104, 3–105, 3–301, and 5–201. Since Oklahoma's *Uniform Consumer Credit Code* has received a partial exemption from Federal Truth in Lending law, as explained above, its provisions must be construed to provide the consumer the same or greater protection as federal law. Under federal law it is clear that the right of rescission would apply to this loan and Credit Union's argument based on construction of the Oklahoma statute is inapplicable. Moreover, if Credit Union were correct in its interpretation, Oklahoma should never have been granted an exemption from federal law, and to the extent that the Oklahoma law were construed to afford less protection to the consumer, it would be preempted by federal law. See J.K. Heselton, J.A. McCaffrey, and F.R. Miller, 9 Okl. City U.L.Rev. 17, 24–28 (1984).

ing. The notice is deemed given when mailed, filed for telegraphic transmission, or, if sent by other means, delivered to the creditor's place of business. On the date notice is deemed given, any security interest of the creditor becomes void and the consumer is not liable for any finance or other charge;

(2) within 20 days of receiving the notice of rescission, the creditor must return to the consumer all money or property received from the consumer in connection with the loan (in this case that amount would be $10,095.37) and must terminate the security interest taken in the consumer's principal dwelling;

(3) after the creditor performs his obligations, the consumer must tender to the creditor all property or money received from the creditor in connection with the loan (in this case that amount would be $33,150.00);

(4) after the consumer tenders back to the creditor the property or money received, the creditor has 20 days to take possession of it and, if the creditor fails to do so, the ownership of the property or money vests in the consumer.

The procedures outlined above apply "except when otherwise ordered by a court." The legislative history to 15 U.S.C. § 1635(b), upon which 14A O.S. § 5–204(2) was modeled, states, in pertinent part, as follows:

> ... a court is authorized to modify this section's procedures where appropriate. For example, a court might use this discretion in a situation where a consumer in bankruptcy or wage earner proceedings is prohibited from returning the property. The committee expects that the courts, at any time during the rescission process, may impose equitable considerations to insure that the consumer meets his obligations after the creditor has performed his obligations as required under the Act.

S.Rep. No. 96–368, 96th Cong., 2d Sess. 29 (1980), U.S.Code Cong. & Admin.News 1980, pp. 236, 264–5.

Thus, the Court, in its own discretion, may modify the procedures under 15 U.S.C. § 1635(b) or 14A O.S. § 5–204(2), to insure that the bankruptcy estate meets its obligations under the statute. The Court's modification of the rescission procedure directly affects the nature and amount of Credit Union's claim in this case. The dilemma facing the Court is how to treat both parties fairly in this situation. The bankruptcy estate has no assets with which to fulfill its rescission obligations.[3] Yet Credit Union clearly violated the law and the bankruptcy estate, having succeeded to the consumer's rights, is entitled to rescind the loan transaction.

Debtors have presented authorities which hold that a consumer has the right to rescind the loan even though the consumer cannot meet its obligation to repay the loan principal. *In re Celona,* 90 B.R. 104 (Bankr.E.D.Pa.1988); *In re Gurst,* 79 B.R. 969 (Bankr.E.D.Pa.1987); *In re Chancy,* 33 B.R. 355 (Bankr.N.D.Okl.1983); and *In re Piercy,* 18 B.R. 1004 (Bankr.W.D.Ky.1982).

The Court has also reviewed authorities which have imposed equitable considerations and conditioned the granting of rescission on the consumer's return of the loan principal to the creditor. *Palmer v. Wilson,* 502 F.2d 860 (9th Cir.1974); *Powers v. Sims & Levin,* 542 F.2d 1216 (4th Cir.1976); *Rudisell v. Fifth Third Bank,* 622 F.2d 243 (6th Cir.1980); *Brown v. Natl. Permanent Fed. Sav. & Loan Assn.,* 683 F.2d 444 (D.C.Cir.1982); *Hull v. Bowest Corp.,* 683 P.2d 1181 (Colo.1984).

The only Tenth Circuit Court of Appeals authority on this question is inconclusive and predates the amendment to 15 U.S.C. § 1635(b) and 14A O.S. § 5–204(2) allowing courts to weigh equitable considerations in assuring the consumer's compliance with its obligations. In *Rachbach v. Cogswell,* 547 F.2d 502 (10th Cir.1976), the Tenth Circuit held that the consumer's tender back of consideration was not a prerequisite to rescission. As stated, this case was decided prior to the amendment which allows courts to modify the rescission proce-

---

**3.** The Trustee has already filed a report of no assets in the case.

dure set out in 15 U.S.C. § 1635(b). Also, the record on appeal in that case did not support a finding that the consumer was not capable of tendering the loan principal. Furthermore, the Tenth Circuit did hold that rescission was "an equitable remedy" and, for equitable reasons, affirmed the trial court's order that the consumer pay interest on the unpaid loan balance, even though the statute clearly excuses the consumer from liability for "any finance or other charge". *Rachbach*, at 505. Thus, the Tenth Circuit has imposed equitable considerations to modify the clear language of the statute, but not in the context of rescission procedure.

The Court is dissatisfied with the remedies imposed by other courts, both those which are pro-consumer and those which are pro-creditor. It would be inequitable to allow the bankruptcy estate to rescind the loan when it has no ability to comply with the statutory obligation to repay the loan principal. The amendment allowing the Court to modify the rescission procedure was enacted precisely to prevent this sort of inequity. On the other hand, it would be inequitable to condition rescission on the tender of the loan principal by the bankruptcy estate when it has no means to comply. This approach benefits Credit Union, which has violated the law.

The Court believes that it can accomplish the goal of 14A O.S. § 5–204(2) and 15 U.S.C. § 1635(b) and place the parties in the position they occupied prior to the loan transaction by modifying the rescission procedure as described below. First, the Court shall allow Credit Union to set off against the $10,095.37 which it would normally tender to the bankruptcy estate the $33,150.00 which the bankruptcy estate would normally tender back to Credit Union. *Harris v. Tower Loan of Mississippi, Inc.*, 609 F.2d 120 (5th Cir.1980).[4] After figuring the set off, the claim of Credit Union against the bankruptcy estate is $23,054.63. Secondly, the Court shall allow Credit Union to retain its security interest in Debtors' principal dwelling to insure repayment of the remainder of the loan principal. Thus, the Court deems Credit Union's claim in this case to be secured. To hold otherwise would be to allow rescission without assuring that the bankruptcy estate fulfills its statutory obligation of repaying all of the loan principal. Accordingly, the Court shall reinstate the mortgage lien of Credit Union on Debtors' principal dwelling to secure the payment of the $23,054.63 claim. Finally, the Court, on its own motion, shall order that the automatic stay be modified without further order of the Court 60 days from the date this Memorandum Decision and Order is entered to allow Credit Union to take action to foreclose its lien to satisfy its claim. This time period should allow Debtors a reasonable opportunity to attempt to obtain a loan to pay off the claim of Credit Union or to make arrangements to sell the property.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1. The claim of Credit Union in this case is determined to be $23,054.63;

2. Such claim is secured by Credit Union's mortgage lien on Debtors' principal dwelling; and

3. The automatic stay shall be modified without further order of the Court 60 days from the date this Memorandum Decision and Order is entered to allow Credit Union to foreclose its security interest in the Debtors' principal dwelling.

---

**4.** The Court agrees with *Harris* that this arrangement prevents the perfunctory exchange of funds, protects the creditor from dissipation of the money, and, most importantly, insures "... the accomplishment of the congressional purpose of restoring the parties to the status quo ante ..." *Harris*, at 123.